(159 App. Div. 490.)

### WARD v. T. HOGAN & SONS, Inc.

(Supreme Court, Appellate Division, Second Department. December 5, 1913.)

SHIPPING (§ 86*) — INJURIES TO STEVEDORE — NEGLIGENCE — SUFFICIENCY OF EVIDENCE—PROXIMATE CAUSE.

    In a longshoreman's action for injuries from the breaking apart of a slingload in a vessel's hold, brought on the ground that the master engaged in discharging the vessel had intrusted a gangwayman with authority to direct or control the work of other employés (Labor Law [Consol. Laws 1909, c. 31] § 200, as amended by Laws 1910, c. 352), and that he was negligent in signaling the winchman to stop, evidence *held* not to show that the stopping of the winch or the failure, if any, sooner to give orders to the winchman, proximately caused the accident.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 343, 353–360; Dec. Dig. § 86.*]

    Rich, J., dissenting.

Appeal from Trial Term, New York County.

Action by Patrick Ward against T. Hogan & Sons, Incorporated. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and CARR, RICH, STAPLETON, and PUTNAM, JJ.

John C. Robinson, of New York City, for appellant.
Robert H. Roy, of Brooklyn (Michael M. Helfgott, of Brooklyn, on the brief), for respondent.

PUTNAM, J. The plaintiff, a longshoreman, employed by the defendant company, was injured while discharging cases or bags of rubber from the lower hold of the steamship Hubert then lying in Brooklyn. He was one of the gang working at No. 3 hatch. The cases of rubber weighed from 400 to 500 pounds. Three of them were slung together in a draft. The longshoremen worked in pairs in making up the sling loads. A chain sling is first laid down, the three packages rolled on it, then the ends of the sling are taken up and drawn closely, so as to tie together the draft, when the load is hooked on the hoisting fall to be raised on signal to the gangwayman on the top deck, who in turn signals a hoisting order to the winchman.

Plaintiff, with his partner, J. McLaughlin, had made up this sling load in the inshore wing. After the sling had been hooked on, the winch had started so as to end-up the load, but not to move it appreciably towards the hatch, when the hoisting stopped. The winchman got

word to let it go back, and, as he slackened, the packages forming the draft fell apart, and one struck plaintiff, bringing his leg against an iron stanchion.

Plaintiff recovered below on the ground that the defendant had intrusted Lofstrom, the gangwayman, "with authority to direct, control, or command" another "employé in the performance of the duty of such employé" (Labor Law, § 200, as amended by Laws of 1910, c. 352), and that Lofstrom had been negligent in signaling the winchman from a position on the inshore side of the deck, where he could not see the draft beneath him leading from the inshore wing of the hold. There was evidence that, when cargo was being hoisted from the inshore wing, a gangwayman on the offshore side of the top deck had a better view below, and that in such circumstances the opposite, offshore, side of the hatch was his proper station.

It, however, does not appear that the signals repeated by Lofstrom, or any failure by him to signal, proximately caused this accident. The slinging was in the ship's wings six or eight feet inside the hatch coamings, far away from the drop of the fall. Plaintiff first said that the men who made up the sling had nothing to do with giving the hoisting signal, which is by the man who hooks on the sling. When he hooks, he has to see that the load is properly slung. The ending-up of this sling load, and the falling apart of the packages, point to a sling load not tightly made up or not securely hooked to the fall, rather than to any fault on the deck above.

Who hooked on this load? Plaintiff first said that it was Hardy, whose place was on the top of the tunnel. Afterward he testified that if the man on the tunnel (which ran about eight feet high) could not get down to hook on the sling, one of the men who made it up hooked it on; and finally admitted that this particular sling was so hooked on by his partner, J. McLaughlin. But McLaughlin, plaintiff's partner, and Hardy, on the tunnel, were not called, nor was their absence accounted for. Patrick McLaughlin, the other witness from the lower hold, was on the opposite side of the tunnel, out in the offshore wing, and had nothing to do with the sling load and could not see what happened to it till after the accident.

If the load had not swung clear, but had only ended-up, the stoppage of the hoisting—whether because the fall caught in the coamings above (which no witness out in the wings could well see), or for lack of steam at the winch, as the winchman thought, such stoppage could not have harmed any one had the sling been tight and the draft properly secured. If this stoppage let the packages fall apart, the sling was not about the middle of the load, or else the load was slack and loose. When the gangwayman looked below at this time, he was heard to blame the men beneath, which incident points the same way.

The evidence, therefore, does not show that the stoppage of the hoisting, or the failure, if any, sooner to give orders to the winchman, proximately brought about this accident.

I advise that the judgment and order be reversed, and a new trial granted; costs to abide the event.

All concur, except RICH, J., dissenting.