## SWAYNE & HOYT, Inc., v. BARSCH.

(Circuit Court of Appeals, Ninth Circuit. August 9, 1915. Rehearing Denied November 8, 1915.)

### No. 2510.

1. MASTER AND SERVANT ☜284—RELATION—QUESTION FOR JURY.

In an action for personal injury to plaintiff while working on a dock in discharging a vessel, *held* on the evidence that whether the defendant, as managing agent of the vessel, was individually liable as plaintiff's employer was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1000–1090, 1092–1132; Dec. Dig. ☜284.]

2. MASTER AND SERVANT ☜277—DISCLOSURE OF PART OF KNOWLEDGE.

The fact that a dock laborer employed by defendant in discharging a vessel acknowledged receipt of money by signing a pay roll, headed, "from Captain ——— for account of above steamer and her owners," was not conclusive proof to him that the defendant was not the owner as well as the manager, and did not put him upon inquiry, since a third person's knowledge of facts and circumstances which, if reasonably followed by inquiry, would have disclosed the principal, does not operate to relieve the agent from personal liability, but such person must have actual knowledge of the principal's identity.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 953; Dec. Dig. ☜277.]

3. APPEAL AND ERROR ☜274—INSTRUCTIONS—SCOPE OF EXCEPTION.

In an action for personal injury to a dock laborer while discharging a vessel, an exception to the refusal of defendant's instruction that the foreman and engineer operating the winch were plaintiff's fellow servants, for whose negligence he could not recover, taken on the ground that the Oregon Employers' Liability Act (Laws 1911, p. 16) did not apply to the unloading of vessels engaged in interstate commerce, did not question an instruction that under the state law all machinery not operated by hand, whenever it was necessary for safety, should be provided with a system of communication signals, and that defendant's failure to comply therewith would be negligence entitling plaintiff to recover, but only questioned the part

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the state law providing that the negligence of a superintendent should not be a defense to an action.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1631–1645; Dec. Dig. ☞274.]

4. MASTER AND SERVANT ☞287—MASTER'S LIABILITY—FELLOW SERVANTS.

It could not be said, as a matter of law, that the mate of a vessel superintending its discharge, with power to discharge the dock laborers, was a fellow servant of a dock laborer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1034, 1045, 1051, 1052, 1054–1067; Dec. Dig. ☞287.]

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

5. MASTER AND SERVANT ☞182—MASTER'S LIABILITY—FELLOW SERVANTS—STATUTES.

Plaintiff, employed in Oregon by defendant, a local corporation, as a dock laborer in the discharge of a vessel, in his common-law action for damages for injuries sustained, was entitled to the protection of Oregon Laws 1911, p. 16, declaring that negligence of a fellow servant shall not be a defense to a servant's action for injury from the negligence of any person engaged in superintendence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. ☞182.]

6. COMMERCE ☞57—REGULATION—MASTER AND SERVANT.

The Oregon statute, depriving an employer of the defense that the negligence resulting in injury to a servant was that of a foreman, is not a regulation of or a burden on interstate commerce, but a law clearly within the power of the state to enact as to injuries through negligence in actions arising within the state as to all persons engaged in business therein, whether such business is connected with interstate commerce or not.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 72–76, 88, 90, 92–102; Dec. Dig. ☞57.]

7. MASTER AND SERVANT ☞131—MASTER'S LIABILITY—STATE REGULATION—POLICE POWER.

A state may, in the exercise of its police power, whenever necessary for the safety of persons employed at and about machinery, enact the humane and reasonable requirement that there shall be a system of communication by signals for the protection of its citizens and those within its jurisdiction.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 265, 279; Dec. Dig. ☞131.]

8. ADMIRALTY ☞20—JURISDICTION—TORT—PERSONAL INJURY TO DOCK LABORER.

In an action at law for injury sustained by plaintiff while working on a dock in defendant's employ in discharging a vessel, the Oregon employers' liability law, providing that whenever necessary for the safety of persons employed in and about it, all machinery not operated by hand power shall be provided with a system of communication by means of signals, was applicable where the injury occurred on the dock, since the case was not within the admiralty jurisdiction, nor was the state law rendered inapplicable by the fact that the plaintiff's contract of employment was a maritime contract, since the plaintiff was suing, not upon the contract, but on the ground of defendant's negligence.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 216, 225, 231; Dec. Dig. ☞20.]

9. ADMIRALTY ☞18—JURISDICTION—TORT.

The test of admiralty jurisdiction in tort is locality; where the cause of action is completed on navigable waters, admiralty has jurisdiction, but

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

where it is completed on land, the remedy belongs to the courts of common law.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 206–221; Dec. Dig. ⊂⊃18.

Admiralty jurisdiction of torts, see notes to Campbell v. H. Hackfeld & Co., 62 C. C. A. 279; Monongahela River Consol. Coal & Coke Co. v. Schinnerer, 117 C. C. A. 203.]

10. ADMIRALTY ⊂⊃1—JURISDICTION—STATE LEGISLATION.

The maritime law of the United States subsists as an entirety, of which the federal courts have exclusive jurisdiction, and must be administered by them unaffected by state legislation.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 1–17; Dec. Dig. ⊂⊃1.]

11. ADMIRALTY ⊂⊃21—JURISDICTION—TORT ON NAVIGABLE WATERS.

In the absence of a remedy by maritime law, a state statute may furnish a remedy for death which occurs from tort on navigable waters, which remedy may be enforced in a proceeding in admiralty.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 218–220; Dec. Dig. ⊂⊃21.]

12. COURTS ⊂⊃322—UNITED STATES COURTS—DIVERSITY OF CITIZENSHIP—AMENDMENT OF COMPLAINT.

Under Act Cong. March 3, 1915, c. 90, 38 Stat. 956, permitting an amendment in the appellate court so as to show on the record diverse citizenship and jurisdiction, plaintiff, in an action at law for personal injury while in the employ of defendant, brought in the federal court on ground of diversity of citizenship, whose complaint properly alleged the citizenship of defendant but did not allege his own citizenship, might amend so as to show the diversity of citizenship.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 876–881, 887; Dec. Dig. ⊂⊃322.]

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action by Gustav Barsch against Swayne & Hoyt, Incorporated. Judgment for plaintiff, and defendant brings error. Affirmed.

Ira A. Campbell and John F. Cassell, both of San Francisco, Cal. (Snow & McCamant and George B. Guthrie, both of Portland, Or., of counsel), for plaintiff in error.

Giltner & Sewall, of Portland, Or., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The parties herein will be designated plaintiff and defendant, as in the court below. The plaintiff recovered a judgment against the defendant, a corporation, for damages on account of personal injuries sustained by him while working on a dock in discharging the cargo of the steamer Camino, at Portland, Or.

[1, 2] One of the assignments of error is that the court denied the defendant's request to instruct the jury to return a verdict for the defendant on the ground that, by the uncontradicted evidence in the case, the defendant was the managing agent only of the steamship. The assignment raises the question whether there was evidence to go to the jury to show that the defendant, rather than the owner, was in-

dividually responsible as the employer of the plaintiff. The defendant was a corporation of the state of California, doing business there, and at Portland through its local agent Kennedy. Kennedy testified that it was his duty to act for the defendant in the capacity of agent in directing the movement of ships that were being run into the port of Portland, to pay all bills for the ships, including the bills of men who helped to load and unload the same; that the plaintiff was on the defendant's pay roll, and was working for the defendant; that he (Kennedy) accounted to the defendant for the money paid out to the men; that it was the defendant's money that he was paying out to the men for unloading the ship; that he did not report the accident to plaintiff to the owner, but to the defendant; that the defendant was the managing agent of the Camino, with power to direct the movements and the operations of the officers and crew, and that it employed the officers of the ship. There was evidence, also, that when the plaintiff made his claim for damages, Kennedy sent him to the defendant at San Francisco, and that he there had negotiations with the defendant with a view to a settlement, and that the officers of the defendant did not disclaim their responsibility, or deny that the plaintiff had been working for the defendant, and the plaintiff testified that they acknowledged that the Camino was operated by them. Kennedy testified that, at the instance of the defendant, he took the plaintiff to a doctor after his return from San Francisco. It is not disputed that on the bow of the Camino were painted the words, "Swayne & Hoyt, Managers."

The defendant, while admitting the general rule that if an agent would avoid liability on a contract which he enters into in his capacity as agent, he must disclose the identity of his principal contends that its principal was sufficiently disclosed by the words at the head of the pay roll, on which the plaintiff acknowledged receipt of money "from Captain ——— for account of above steamer and her owners." But there was evidence that the plaintiff signed the pay roll without reading the printed form thereof; and, even if he had read it, it was not conclusive proof to him that the defendant itself was not the owner as well as the manager. Nor was the plaintiff put upon inquiry by those words in the pay roll.

"Knowledge by the third person of facts and circumstances which would, if reasonably followed by inquiry, have disclosed the identity of the principal does not operate to relieve the agent from personal liability, but the third person must have actual knowledge of the principal's identity." 31 Cyc. 1558, note, and cases there cited.

In Ye Seng Co. v. Corbitt (D. C.) 9 Fed. 423, Judge Deady held that the signature of the agents, "Corbitt & Macleay, Agent for Owners of the American Bark Garibaldi, of Portland, Oregon," was not sufficient to disclose the name of the principal. See, also, Farrell v. Campbell, 3 Ben. 8, Fed. Cas. No. 4,681. In this connection the defendant advances the contention that what was done on board the Camino must have been done by authority of the owners represented by the master, and that the plaintiff, who was employed by Kennedy for the defendant, was serving a different employer, and it invokes the rule that when two masters are engaged in a common undertaking,

one is not liable to his servant for an injury occasioned by the servant of the other. There is in the record no exception or assignment of error which raises the contention so made, but it is a sufficient answer to it to say that there was evidence that the defendant had full charge of the operation of discharging the ship. It was the manager of the ship, with its corporate name painted thereon as manager, and the jury may have found that the defendant, by its own authority, had placed in charge of the whole operation the mate, who was shown to have been the superintendent in charge. In view of 'all the evidence we think that the question of the defendant's liability was properly left to the jury.

[3] It is contended that the trial court erred in applying as the law of the case the employers' liability law of Oregon. But no exception was taken to the charge of the court that under the statute of the state of Oregon, all machinery other than that operated by hand power, whenever necessary for the safety of persons employed in and about the same, or for the safety of the general public, shall be provided with a system of communication by means of signals, or to the instruction which followed that, if the jury found that the injury to the plaintiff was caused by the failure of the defendant to comply with the provisions of that statute, that failure would be negligence within the meaning of the law, and would entitle the plaintiff to recover.

But it is said that in effect an exception was reserved to that portion of the charge by the exception which was saved to the refusal of the court to instruct, as requested by defendant, that the foreman and the engineer operating the winch were fellow servants of the plaintiff, and that for negligence of the foreman the plaintiff could not recover in the action. The ground of the exception was that the employers' liability law of the state of Oregon had no application to the loading or unloading of vessels coming in and out of the city of Portland, and engaged in interstate commerce. It is too clear to require discussion that the exception called in question only that portion of the state employers' liability law which provided that the negligence of the superintendent, manager, foreman, or other person in charge or control of the work shall not be a defense to such an action.

[4] The sole question, therefore, presented to this court on the assignment is whether it was error to refuse the requested instruction. The refusal of that instruction was not error, for two reasons: First, upon the evidence, and irrespective of the Oregon statute, the court would not have been justified in charging the jury that the foreman referred to in the requested instruction was, as a matter of law, a fellow servant with the plaintiff. The foreman was Ahlin, the mate of the vessel, and he was in full charge of the operation of unloading the same, in the progress of which the plaintiff was injured. There was a dock boss named Dosch, who had direction of the movements of the men on the dock, but the "general superintendent over all," as the plaintiff testified, was the mate, and all who were engaged in the operation took their orders from him. As the defendant was a corporation of California, and was engaged in a work of discharging the ship at a dock in Oregon, it was necessarily represented at that place

by some officer, and that officer evidently was the mate. There was no testimony to the contrary, although one of the witnesses testified that the general superintendent over all was "the mate and Mr. Kennedy." Kennedy was the local agent of the defendant corporation at Portland, and kept the pay roll. Dosch, the dock foreman, engaged the men from the secretary of the Longshoremen. It does not appear from the testimony who had the power to discharge the men, but it should be assumed that the mate had that power, from the fact that he was the general superintendent over all who were engaged in the work, and it may be assumed that he was made superintendent by the defendant, for it was the manager of the ship.

[5] Second, it was not error to refuse the requested instruction, for the reason that General Laws of Oregon 1911, p. 16, provide that negligence of a fellow servant shall not be a defense to an action brought to recover for injuries suffered by an employé in the case of the neglect of any person engaged as superintendent, manager, foreman, or other person in charge or control of the works, plant, machinery, or appliances. The plaintiff was employed in the state of Oregon, not by the ship or by her owners, but by a corporation locally operating there, to engage in a work in that state, and in his common-law action to recover damages for injuries sustained in that work, he is entitled to the protection of that provision of the state statute.

[6] We find no merit in the contention that because the Camino was engaged in interstate commerce that statute was inapplicable. There can be no question that, until Congress enacted a law regulating the same subject-matter, the state had the power to enact and enforce its own statute. The decision in South Covington Ry. v. Covington, 235 U. S. 537, 35 Sup. Ct. 158, 59 L. Ed. 350, cited by the defendant, is not authority to the contrary. The statute of Oregon which deprives an employer of his defense on the ground that the negligence was that of a foreman is not a regulation of, and does not impose a burden on, interstate commerce. It is a law affecting liability for injuries through negligence in actions arising within the jurisdiction of the state, which it was clearly within the power of the state to enact as to all persons who are engaged in business in the state, whether their business is connected with interstate commerce or not. We may assume, although it is not very clearly shown, that the Camino was in the coasting trade between San Francisco and Portland, and was engaged in interstate commerce. The defendant, a corporation engaged in unloading the vessel, was subject to the state law, just as railroads engaged in interstate commerce are, in the absence of a federal statute regulating the same matter, subject to the local law. Such a law becomes the rule of decision in the federal courts under the provisions of section 721, Rev. St. (Comp. St. 1913, § 1538). It was uniformly recognized by those courts prior to Act Cong. April 22, 1908, c. 149, 35 Stat. 65 (Comp. St. 1913, §§ 8657–8665) which abrogated the fellow-servant rule as to the liability of interstate common carriers by railroad to their employés, that state statutes, abrogating the fellow-servant rule with respect to railroad companies which did business in the state, were applicable to railroad

companies engaged in interstate commerce in the state. Texas & Pacific R. R. Co. v. Corlin, 189 U. S. 354, 23 Sup. Ct. 585, 47 L. Ed. 849. The constitutionality of such a state statute was affirmed in Missouri Railway Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107, Louisville & Nashville R. R. Co. v. Melton, 218 U. S. 36, 30 Sup. Ct. 676, 54 L. Ed. 921, 47 L. R. A. (N. S.) 84, and Mobile J. & K. C. R. R. v. Turnipseed, 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463. And even if the provision of the Oregon act which requires the use of a signal system were called in question in this case, which it is not, it would clearly be within the exceptions recognized in South Covington Ry. v. Covington, wherein it was held that a state may, in the exercise of its police power, in the interest of public health and safety, and in the absence of legislation by Congress, enact regulations which incidentally or indirectly affect interstate commerce. Thus the court in that case admitted the authority of the city of Covington to forbid a railroad company to permit any passenger to ride upon the rear platform of a car unless the same were provided with a suitable rail or barrier, and in Atlantic Coast Line v. Georgia, 234 U. S. 280, 34 Sup. Ct. 829, 58 L. Ed. 1312, the court said:

"In the absence of legislation by Congress, the states are not denied the exercise of their power to secure safety in the physical operation of railroad trains within their territory, even though such trains are used in interstate commerce."

[7] In that case the court affirmed the power of a state to require railroad companies to use on their locomotives electric headlights of specified form and power, to secure safety in the physical operation of railroad trains in, or passing through, the state. Similar decisions are Hennington v. Georgia, 163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166, affirming the power of a state Legislature to forbid the running of freight trains on any railroad in the state on Sunday, New York, N. H. & H. Railroad v. New York, 165 U. S. 628, 17 Sup. Ct. 418, 41 L. Ed. 853, recognizing the power of a state to forbid any steam railroad doing business in the state to heat its passenger cars on other than mixed trains, by any stove or furnace kept inside of the car, and Chicago, R. I. & Pac. Ry. Co. v. Arkansas, 219 U. S. 453, 31 Sup. Ct. 275, 55 L. Ed. 290, declaring valid a state statute which prescribed a certain number, not unreasonable, for the crews of freight trains on all railroads in the state whose lines were more than 50 miles in length, and holding that such a statute was not a burden on interstate commerce. It is certainly in line with these authorities to hold that the state of Oregon may, in the exercise of its police power, whenever necessary for the safety of persons employed in and about machinery, make the humane and reasonable requirement that there shall be a system of communication by means of signals for the protection of the lives and limbs of its citizens and the people within its jurisdiction.

[8-11] The defendant contends that the Employers' Liability Act of Oregon is not applicable, for the further reason that the stevedore's employment is a maritime contract, and is controlled by the maritime law, that maritime law is to be applied in determining all

the obligations arising from the contract, and that a state Legislature cannot enlarge such obligations or change the maritime law. The action in the case at bar was not brought in admiralty. The paper which the plaintiff filed was not a libel in personam, but a complaint in an action at law, and as an action at law the case was tried before a jury. The decision in Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157, cited by the defendant, is not authority for the proposition that there would have been jurisdiction in admiralty. What was decided in that case was that admiralty had jurisdiction of a suit in personam to recover for injuries sustained by an employé who is engaged in loading a vessel at a dock in navigable waters, the employé having been injured while at work on the vessel. The court reaffirmed the general principle "that the test of admiralty jurisdiction in tort in this country is locality." The opinion cites and leaves undisturbed a long line of decisions made both before and since the decision in The Plymouth, 3 Wall. 20, 18 L. Ed. 125, that where the tort is committed, not on the vessel, but on the shore or on a dock, or where it is committed partly on land and partly on water, the question whether admiralty has jurisdiction over it is determined by the place of the damage, and not by the place of the origin of the tort. Some of the cases cited are included in the following: The Mary Stewart (D. C.) 10 Fed. 137; The Ottawa, 1 Brown's Adm. 356, Fed. Cas. No. 10,616; The Mary Garrett (D. C.) 63 Fed. 1009; The Maud Webster, 8 Ben. 547, Fed. Cas. No. 9,302; Bain v. Sandusky Transportation Co. (D. C.) 60 Fed. 912; The Albion (D. C.) 123 Fed. 189; The Bee (D. C.) 216 Fed. 709; The H. S. Pickands (D. C.) 42 Fed. 239; Hermann v. Port Blakely Mill Co. (D. C.) 69 Fed. 646; Cleveland Terminal R. R. v. Steamship Co., 208 U. S. 316, 28 Sup. Ct. 414, 52 L. Ed. 508, 13 Ann. Cas. 1215; Martin v. West, 222 U. S. 191, 32 Sup. Ct. 42, 56 L. Ed. 159, 36 L. R. A. (N. S.) 592. Among the cases cited with approval is The H. S. Pickands (D. C.) 42 Fed. 239. In that case the libelant was engaged in making repairs on the ship. In attempting to go on shore to procure other material, he mounted a ladder which, being unfastened at the base, slipped, throwing him down upon the wharf, by reason of which he was severely injured. Said Judge Brown in deciding the case:

"I am clear in my opinion that a court of admiralty has no jurisdiction of this case. It has never been doubted since the case of The Plymouth, 3 Wall. 20 [18 L. Ed. 125], that, to enable us to take cognizance of a maritime tort, the injury must have been consummated, and the damage received, upon the water. The mere fact that the wrongful act was done upon a ship is insufficient."

In The Plymouth it was said:

"The wrong and injury complained of must have been committed wholly upon the high seas or navigable waters, or, at least, the substance and consummation of the same must have taken place upon these waters to be within the admiralty jurisdiction. In other words, the cause of damage, in technical language, whatever else attended it, must have there been complete."

The difference between Atlantic Transport Co. v. Imbrovek and the present case is the difference between land and sea. Imbrovek was

injured while working on the ship. Barsch, the plaintiff here, was injured while working on the dock.

The cases specially relied upon to sustain the contention that the case at bar is ruled by the maritime law are The Henry B. Smith (D. C.) 195 Fed. 312, and Schuede v. Zenith S. S. Co. (D. C.) 216 Fed. 566. In The Henry B. Smith, which was a suit in rem in the admiralty to recover for personal injuries, the court went no further than to affirm the general rule that the maritime law of the United States subsists as an entirety, of which federal courts have exclusive jurisdiction, and that it must be administered by them unaffected by state legislation. That rule, it may be observed, is well settled. But it is equally well settled that in the absence of a remedy by maritime law, a state statute may furnish a remedy for death which occurs from tort on navigable waters, which remedy may be enforced in a proceeding in admiralty. Mr. Justice Holmes, in The Hamilton, 207 U. S. 398, 404, 28 Sup. Ct. 133, 134 (52 L. Ed. 264) said:

"The same argument that deduces the legislative power of Congress from the jurisdiction of the national courts tends to establish the legislative power of the state where Congress has not acted. Accordingly it has been held that a statute, giving damages for death caused by a tort, might be enforced in a state court, although the tort was committed at sea."

In that case the court cited The City of Norwalk (D. C.) 55 Fed. 98, in which Judge Brown held that while that which is peculiar to the maritime law, or that which by its interstate or international relations would be incompatible with diverse state legislation and can be changed by Congress alone, state legislation is not excluded upon maritime subjects of a local nature, nor legislation under the police power for the preservation of life or health, not incompatible with interstate or international interests, in the absence of legislation by Congress. In McDonnell v. Ocean Steam Navigation Co., 143 Fed. 480, 74 C. C. A. 500, the Circuit Court of Appeals for the Second Circuit recognized as applicable the Employers' Liability Act of New York (Consol. Laws, c. 31), making a master responsible for the negligence of his superintendent, or foreman, in a case in which the plaintiff's intestate, a longshoreman, was killed by falling through a hatch on the defendant's steamship. And in Trauffler v. Detroit & Cleveland Navigation Co. (D. C.) 181 Fed. 256, in a similar action, brought, however, in admiralty, it was held that reference must be had to the employers' liability law of New York in determining the question of the liability of the master for the death of his servant, who had been killed in a collision. In Schuede v. Zenith S. S. Co., the plaintiff had brought an action in a state court to recover damages for injuries which he sustained as a wheelsman upon a vessel "in waters within the jurisdiction of maritime law." The cause was removed to the federal court on the ground of diversity of citizenship. The action might have been brought in the admiralty, but the plaintiff elected to bring it as a common-law action, on account of the advantages accruing to him under the Ohio Employers' Liability Act (Gen. Code, § 6244 et seq.), claiming the right to do so under section 24 and subdivision 3 of section 256 of the Judicial Code of the United States (Act March

3, 1911, c. 231, 36 Stat. 1091, 1160 [Comp. St. 1913, §§ 991, 1233]), which provides for a saving to suitors against the exclusive jurisdiction of admiralty "in all cases the right of a common-law remedy when the common law is competent to give it." The court held that the provisions of the law maritime as to the relation of a seaman to his employer are part of the substance and obligations thereof, which cannot be modified by state law, and that in the case of an injury to a seaman in the course of his employment the maritime law determines his rights in an action to recover therefor, whether his suit be brought in a state or in a federal court. But in that case the plaintiff had the unquestioned right to resort to admiralty, and the conclusion of the court was based upon that fact. That this was in the mind of the court is shown by the reference made in the opinion to the case of Steamship Co. v. Chace, 16 Wall. 530, 21 L. Ed. 369, in which the court said:

"Where no remedy exists for an injury in the admiralty courts the fact that such courts exist and exercise jurisdiction in other causes of action leaves the state courts as free to exercise jurisdiction in respect to an injury not cognizable in the admiralty as if the admiralty courts were unknown to the Constitution, and had no existence in our jurisprudence."

In the present case there could have been no jurisdiction in admiralty for the reason that the plaintiff was injured while working on a dock. The rule, declared in The Plymouth, supra, has ever since been followed that jurisdiction of torts in admiralty depends upon locality; that where the cause of action is completed on navigable waters, admiralty has jurisdiction, but where it is completed on land, the remedy belongs to the courts of common law. We cannot assent to the proposition that the employers' liability law of Oregon is rendered inapplicable by the fact that the contract whereby the plaintiff was employed by the defendant was a maritime contract. The plaintiff is not suing upon the contract. He is suing upon the breach of the implied obligation of his employer to use due care. The argument of defendant involves the untenable proposition that while the plaintiff could not have brought a suit in admiralty, and his only remedy was a common-law action, the court which entertained jurisdiction of the common-law action was nevertheless required to apply thereto the maritime law, and to try the case as if it were sitting as a court of admiralty, all for the reason that the contract under which the plaintiff was rendering services to the defendant at the time of the injury was a maritime contract.

The remarks of Mr. Justice Blatchford in Johnson v. Chicago, etc., Elevator Co., 119 U. S. 388, 397, 7 Sup. Ct. 254, 258 (30 L. Ed. 447), express, we think, the law which is applicable to the case at bar. He said:

"Under the decisions of this court in The Plymouth, 3 Wall. 20 [18 L. Ed. 125], and in Ex parte Phenix Ins. Co., 118 U. S. 610 [7 Sup. Ct. 25, 30 L. Ed. 274], at the present term, it must be held that the cause of action in this case was not a maritime tort of which a District Court of the United States, as a court of admiralty, would have jurisdiction, and that the remedy belonged wholly to a court of common law; the substance and consummation of the wrong having taken place on land, and not on navigable water, and the cause of action not having been complete on such water. This being so,

no reason exists why the remedy for the wrong should not be pursued in the state court, according to the statutory method prescribed by the law of the state, even though that law gives a lien on the vessel."

In Steamship Co. v. Chace, supra, it was said:

"State statutes, if applicable to the case, constitute the rules of decision in common-law actions, in the Circuit Courts as well as in the state courts, but the rules of pleading, practice, and of evidence in the admiralty courts are regulated by the admiralty law as ultimately expounded by the decisions of this court."

State courts in actions similar to that which is here under consideration have not doubted the applicability of local statutes which affect the relation between master and servant. Ward v. T. Hogan & Sons, 159 App. Div. 490, 144 N. Y. Supp. 514; Worley v. Spreckels Bros. Commercial Co., 163 Cal. 60, 124 Pac. 697. We think it clear that if admiralty could have had no jurisdiction of this cause of action, maritime law has no control over its determination.

[12] The ground of jurisdiction in the court below was diversity of citizenship. The citizenship of the defendant is properly alleged in the complaint, but the plaintiff neglected to allege his own citizenship. Under the act of Congress approved March 3, 1915, 38 Stat. 956, c. 90, which permits an amendment in the appellate court in such a case so as to show on the record diverse citizenship and jurisdiction, the plaintiff will be permitted to file, within 10 days, such an amendment; and, inasmuch as the question of the defect in the pleadings has not been raised by the parties, this order is made without costs to the plaintiff. Upon the filing of that amendment, the judgment is affirmed.

ROSS, Circuit Judge (dissenting). The defendant in error brought this action in the court below against the plaintiff in error (defendant there), to recover damages for injuries sustained while working as a stevedore in unloading, from the steamship Camino, at a dock in Portland harbor, certain structural iron beams. The ship was owned by the Western Steam Navigation Company, "the managing agent" of which was the defendant, Swayne & Hoyt, Inc., and, the record shows, was at the time engaged in interstate commerce.

The complaint alleged, among other things, that the unloading of the beams was done by means of a double winch which was located upon the deck of the ship, and was operated by an engineer and a foreman by means of "cables, falls, hooks, and slings"; that in unloading the vessel "said sling and fall were fastened by means of a hook to each end of said structural iron beams, which said sling and fall were fastened or connected with a cable which wound around the drum of said steam winch, and then said beams were raised by means of said steam winch and apparatus from the deck of said steamship into the air and lowered over the rail of said ship down to and on to a truck on said lock, where said plaintiff and his fellow servants would receive, unloosen, and place said beams upon said truck, and then remove them out of the way of the next load and stow them away upon said dock"; that for the proper unloading of the ship and the proper

protection of the men working on the dock, it was necessary, and the duty of the defendant, to employ "a hatch tender or signal man to signal from the men working on the dock to the engineer operating the steam winch"; that in course of the said work the "plaintiff and his fellow workmen had received from a truck upon said dock one of said iron beams, and said plaintiff, whose duty required him to so do, took hold of said beam, which was unhooked on one end, for the purpose of steadying it, and in order that the same could be successfully released from said hook, cable, and sling, when the foreman of said defendant carelessly and negligently, and in his haste to unload said ship, gave the signal to the engineer to go ahead before he was notified by the men who were handling the load on the truck to do so, which the said engineer did without any notice to the plaintiff or his fellow workmen, and said beam was suddenly and unexpectedly raised, and with great force and violence struck plaintiff," inflicting the injuries for which he sued; that "said injuries were particularly caused by the negligence of defendant in failing to furnish plaintiff a safe place to work, and in failing to keep same in a safe condition, and in failing to furnish a system of communication by means of signals at said time and place so that at all times there might be prompt and efficient communication between the employés working on the dock and the engineer operating the steam winch on the deck of said ship."

The issues in the case came on for trial before a jury, and upon the conclusion of all the evidence the defendant requested the court to direct a verdict in its favor, which request was denied, and a verdict returned for the plaintiff, followed by a judgment for the amount of the verdict, with costs.

But two points are relied upon by the plaintiff in error for a reversal of the judgment, the first being the refusal of the trial court to direct a verdict in its favor, and the second, the action of the court in applying to the case the statute of the state of Oregon in respect to the liability of employers.

The first point so relied upon rests on the contention that as the plaintiff in error was but the managing agent of the owner of the ship, the plaintiff in error was not the employer of the plaintiff, and that the latter's cause of action, if any, was against the owner of the ship. In respect to that question the instruction of the court below to the jury was clear, and to the effect that if Swayne & Hoyt, Inc., was the mere managing agent of the ship, and in such capacity employed the men engaged in the discharge of it, it would not be liable for the damage claimed by the plaintiff, but that the liability, if any, was that of the owner of the ship, and that before Swayne & Hoyt—

"could be held responsible for an accident occurring on the boat, it must appear that they themselves on their own account were in charge of the boat at that time, operating it and directing the men and the course of procedure, and that through some negligent act of theirs the injury occurred, and unless that appears in this case, then there is no liability against Swayne & Hoyt, whatever liability there may be against other parties."

The court left to the jury the determination from the evidence of that question of fact; and, as there was some evidence tending to

sustain the contention of the plaintiff in that regard, the action of the court refusing to direct a verdict for the defendant cannot be held error.

It is objected that the second point relied upon by the plaintiff in error is not open to consideration, on the ground that no exception was taken to the ruling of the court in respect to the applicability to the case of the Employers' Liability Act of the state of Oregon. But counsel are mistaken in that regard. The record shows that the defendant requested the court to instruct the jury, among other things, as follows:

"It is charged in the plaintiff's complaint that the accident which brought about the alleged injuries to the plaintiff arose by the action of the foreman of the defendant, who, it is said, carelessly and negligently, and in his haste to unload the ship, gave the signal to the engineer to go ahead before this foreman was notified by the plaintiff, or his co-workmen who were handling the load on the truck, to do so, and that the engineer operating the winch on the vessel, without notice to the plaintiff, obeyed the signal of the foreman, in consequence of which plaintiff was injured. I charge the jury that the foreman in question, and the engineer operating the winch on the vessel were fellow servants of the plaintiff, and for any negligence of the foreman in prematurely giving, if he did prematurely give, the signal to the winchman, the plaintiff cannot recover in this action," which instruction the court "then and there refused, to which refusal the defendant then and there excepted in open court, the exception being allowed. the ground of the exception being that the employers' liability law of the state of Oregon had no application to the loading or unloading of vessels coming in and out of the city of Portland and engaged in interstate commerce, and that the foreman in question, with the winchman, were, under the law, fellow servants of the plaintiff."

And the court proceeded to charge the jury to the contrary, and, among other things, as follows:

"The law is that an employer is required to exercise reasonable care to provide his employés with a reasonably safe place in which to work, and the statute of this state provides that all machinery, other than that operated by hand power, shall, whenever necessary for the safety of persons employed in or about the same, or for the safety of the general public, be provided with a system of communication by means of signals so that at all times there may be prompt and efficient communication between employés or other persons and the operator of the motive power. So that if you believe from the testimony that, at the time of the plaintiff's accident, or the injury received by him, it was necessary for the safety of the persons employed in or about these boats that a system of communication by means of signals should have been provided, so that the winchman could have been advised of the movements of the men who were engaged in discharging and storing the cargo, and that the parties in charge of the boat and who are responsible for this injury failed and neglected to provide such a signal, and that failure was the proximate cause of the plaintiff's injury, then in that event it would be negligence within the meaning of this statute, and would entitle the plaintiff to recover."

—and, further, that:

"If Swayne & Hoyt were in charge of the boat at the time, not as agents for the owners, but on their own account, and their employés or those over whom they had charge—the foreman if they had charge of the foreman— through negligence gave a signal at a time when they should not have given a signal, and on this account the injury occurred, then they would be responsible for it under the Oregon statute, because it makes the foreman in such case the representative of the master."

226 F.—38

The Oregon statute referred to (General Laws of Oregon of 1911, p. 16), provides in its first section, among other things, that:

"All machinery other than that operated by hand power shall, whenever necessary for the safety of persons employed in or about the same or for the safety of the general public, be provided with a system of communication by means of signals, so that at all times there may be prompt and efficient communication between the employés or other persons and the operator of the motive power," and that the "manager, superintendent, foreman or other person in charge or control of the construction or works or operation, or any part thereof, shall be held to be the agent of the employer in all suits for damages for death or injury suffered by an employé," and that "in all actions brought to recover from an employer for injuries suffered by an employé the negligence of a fellow servant shall not be a defense where the injury was caused or contributed to by any of the following causes, namely: * * * The neglect of any person engaged as superintendent, manager, foreman, or other person in charge or control of the works, plant, machinery or appliances; the incompetence or negligence of any person in charge of, or directing the particular work in which the employé was engaged at the time of the injury or death; * * * 'the act of any fellow servant done in obedience to the rules, instructions or orders given by the employer or any other person who has authority to direct the doing of said act."

And section 6 of the Oregon statute declares that:

"The contributory negligence of the person injured shall not be a defense. but may be taken into account by the jury in fixing the amount of the damage."

While it is admitted on the part of the defendant in error that the work of a stevedore is of a maritime nature, and that his employment for such work is a maritime contract, it is insisted that where the injury, as in the present case, is received by the stevedore on shore, although caused by negligence originating on the ship, the case is not within the jurisdiction of admiralty. It is sufficient to cite in negation of that contention the doctrine of the recent decision of the Supreme Court in the case of the Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157.

It necessarily results, I think, that the maritime law, and not the statute of Oregon, is the law applicable to the rights of the plaintiff and the liability of the defendant in the present case.

The judicial power of the United States is, by article 3, § 2, of the Constitution, extended to, among other things, "all cases of admiralty and maritime jurisdiction," which power, it was held by the Supreme Court in the case of The Moses Taylor, 4 Wall. 411, 429, 18 L. Ed. 397, to be "in some cases unavoidably exclusive of all state authority, and that in all other cases it may be made so at the election of Congress"; and in the case of The Lottawanna, 21 Wall. 558, 575, 22 L. Ed. 654, the same court, in speaking of the power so committed to the United States said, among other things:

"One thing, however, is unquestionable, the Constitution must have referred to a system of law co-extensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several states, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the states with each other or with foreign states."

Again, in the case of Butler v. Boston Steamship Co., 130 U. S. 527, 557, 9 Sup. Ct. 612, 619 (32 L. Ed. 1017), the same court said:

"As the Constitution extends the judicial power of the United States to 'all cases of admiralty and maritime jurisdiction,' and as this jurisdiction is held to be exclusive, the power of legislation on the same subject must necessarily be in the national Legislature, and not in the state Legislatures."

In the subsequent case of Workman v. Mayor, etc., of New York, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314, the first question arising was whether, in the decision of the controversy there, the local law of the city of New York or the maritime law should control; and, secondly, whether, if the case was to be solely governed by the maritime law, the city was liable. After stating the first proposition more fully, at page 558 of 179 U. S., at page 214 of 21 Sup. Ct., 45 L. Ed. 314, the court proceeded to declare:

"The practical destruction of a uniform maritime law which must arise from this premise is made manifest when it is considered that, if it be true that the principles of the general maritime law, giving relief for every character of maritime tort where the wrongdoer is subject to the jurisdiction of admiralty courts, can be overthrown by conflicting decisions of state courts, it would follow that there would be no general maritime law for the redress of wrongs, as such law would be necessarily one thing in one state and one in another; one thing in one port of the United States and a different thing in some other port. As the power to change state laws or state decisions rests with the state authorities by which such laws are enacted or decisions rendered, it would come to pass that the maritime law, affording relief for wrongs done, instead of being general and ever-abiding, would be purely local—would be one thing to-day and another thing to-morrow. That the confusion to result would amount to the abrogation of a uniform maritime law is at once patent. And the principle by which the maritime law would be thus in part practically destroyed would besides apply to other subjects specially confided by the Constitution to the federal government. Thus, if the local law may control the maritime law, it must also govern in the decision of cases arising under the patent, copyright, and commerce clauses of the Constitution. It would result that a municipal corporation, in the exercise of administrative powers which the state law determines to be governmental, could, with impunity, violate the patent and copyright laws of the United States or the regulations enacted by Congress under the commerce clause of the Constitution, such as those concerning the enrollment and licensing of vessels. This follows if a corporation must, for a wrong by it done, be allowed to escape all reparation upon the theory that, though ordinarily liable to sue and be sued, it possessed in the particular matter the freedom from suit which attaches to a sovereign state."

An analogous question was decided by the Supreme Court January 5, 1915, in the case of South Covington & Cincinnati Street Railway Company v. City of Covington et al., 235 U. S. 537, 35 Sup. Ct. 158, 59 L. Ed. 350, where it was held that certain portions of an ordinance of the city of Covington relating to the traffic over a certain street railway line were void as being in conflict with the exclusive power of the United States over interstate commerce. After referring to certain principles enunciated in the Minnesota Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, the court said:

"In the light of the principles settled and declared, the various provisions of this ordinance must be examined. That embodied in sections 1 and 6 makes it unlawful for the company to permit more than one-third greater in number of the passengers to ride or be transported within its cars over and above the

number for which seats are provided therein, except this provision shall not apply or be enforced on the Fourth of July, Decoration Day or Labor Day, and by section 6 it is made the duty of the company operating the cars within the city of Covington to run and operate the same in sufficient numbers at all times to reasonably accommodate the public, within the limits of the ordinance as to the number of passengers permitted to be carried, and the council is authorized to direct the number of cars to be increased sufficiently to accommodate the public if there is a failure in this respect. To comply with these regulations, the testimony shows, would require about one-half more than the present number of cars operated by the company, and more cars than can be operated in Cincinnati within the present franchise rights and privileges, held by the company, or controlled by it, in that city. Whether, in view of this situation, this regulation would be so unreasonable as to be void, we need not now inquire. These facts, together with the other details of operation of the cars of this company, are to be taken into view in determining the nature of the regulation here attempted, and whether it so directly burdens interstate commerce as to be beyond the power of the state. We think the necessary effect of these regulations is not only to determine the manner of carrying passengers in Covington and the number of cars that are to be run in connection with the business there, but necessarily directs the number of cars to be run in Cincinnati, and the manner of loading them when there, where the traffic is much impeded and other lines of street railway and many hindrances have to be taken into consideration in regulating the traffic. If Covington can regulate these matters, certainly Cincinnati can, and interstate business might be impeded by conflicting and varying regulations in this respect, with which it might be impossible to comply. On one side of the river one set of regulations might be enforced, and on the other side quite a different set, and both seeking to control a practically continuous movement of cars. As was said in Hall v. De Cuir, 95 U. S. 485, 489 [24 L. Ed. 547], 'commerce cannot flourish in the midst of such embarrassments.' We need not stop to consider whether Congress has undertaken to regulate such interstate transportation as this, for it is clearly within its power to do so, and absence of federal regulation does not give the power to the state to make rules which so necessarily control the conduct of interstate commerce as do those just considered."

In the case of The Chusan, Fed. Cas. No. 2,717, Judge Story said:

"In the exercise of this admiralty and maritime jurisdiction, the courts of the United States are exclusively governed by the legislation of Congress and, in the absence thereof, by the general principles of the maritime law. The states have no right to prescribe the rules by which the courts of the United States shall act, nor the jurisprudence which they shall administer. If any other doctrine were established, it would amount to a complete surrender of the jurisdiction of the courts of the United States to the fluctuating policy and legislation of the states. If the latter have a right to prescribe any rule, they have a right to prescribe all rules to limit, control, or bar suits in the national courts. Such a doctrine has never been supported, nor has it for a moment been supposed to exist, at least, so far as I have any knowledge, either by any state court, or national court, within the whole union. For myself, I can only say that during the whole of my judicial life, I have never, up to the present hour, heard a single doubt breathed upon the subject."

It is true that Congress, in vesting in the District Courts exclusive cognizance of all cases of admiralty and maritime jurisdiction, saved to suitors "the right of a common-law remedy, where the common law is competent to give it" (see 711 R. S.; U. S. Comp. St. 1901, p. 577); but it was distinctly adjudged by the Supreme Court in The Moses Taylor Case, 4 Wall. 431, 18 L. Ed. 397, that the right so saved to suitors "is not a remedy in the common-law courts which is saved, but a common-law remedy." In speaking of the same saving clause,

the same court said, in the case of Steamboat Co. v. Chace, 16 Wall. 522, 534, 21 L. Ed. 369:

"Examined carefully, it is evident that Congress intended by that provision to allow the party to seek redress in the admiralty if he saw fit to do so, but not to make it compulsory in any case where the common law is competent to give him a remedy. Properly construed, a party under that provision may proceed in rem in the admiralty, if a maritime lien arises, or he may bring a suit in personam in the same jurisdiction, or he may elect not to go into admiralty at all, and may resort to his common-law remedy in the state courts, or in the Circuit Courts of the United States if he can make proper parties to give the Circuit Court jurisdiction of his case."

But whether the party whose rights arise under and by virtue of the maritime contract seeks redress in rem in admiralty, or by suit in personam in the same jurisdiction (as the present defendant in error did), the rights, obligations, and liabilities of the respective parties to the contest must, in my opinion, be measured by the maritime law; otherwise, the rights, obligations, and liabilities growing out of such maritime contracts are subject to and may be governed by the varying provisions of the state Legislatures, and there would be no force to the decision of the Supreme Court in The Moses Taylor Case that the right saved to suitors by section 711, R. S. (U. S. Comp. St. 1901, p. 577), "is not a remedy in the common-law courts, but a common-law remedy." See Schuede v. Zenith S. S. Co. (D. C.) 216 Fed. 566, and cases there cited.

It is undisputed that the provisions of the Employers' Liability Act of the state of Oregon, which the court below in effect instructed the jury controlled the present case, imposed greater liability upon the plaintiff in error than does the maritime law, among other things, in making the defendant liable for its failure to have the Camino provided with "a system of communication by means of signals," so that at all times there could be prompt and efficient communication between the operator of the motive power and all other employés.

It is my understanding of the admiralty law that it is broad-gauge, and embraces all maritime contracts, maritimes torts, and maritime injuries, and applies to all vessels engaged in transportation, whether upon inland waters or upon the seas. It applies to ships in commission, whether lying in the water alongside a wharf or suspended in a dry dock for repairs. The Supreme Court did not consider the steamship Jefferson, involved in the case reported in 215 U. S. 130, 30 Sup. Ct. 54, 54 L. Ed. 125, 17 Ann. Cas. 907, on "shore" because she was out of the water and in a dry dock, but, on the contrary, that she was, in that situation, just as much within the jurisdiction of admiralty as she was while lying in the water moored to the wharf. In the case of Leathers v. Blessing, 105 U. S. 626, 26 L. Ed. 1192, an action of tort, the same court held that the jurisdiction in admiralty was not ousted by the fact that when the wrong was done on the vessel by the negligence of the master she had completed her voyage and was securely moored at a wharf where her cargo was about to be discharged, saying (105 U. S. 628, 26 L. Ed. 1192):

"The only question raised by the appellants is as to whether the suit was one of admiralty jurisdiction in the District Court. They maintain that jurisdiction of the case belonged exclusively to a court of common law. Attention

is directed to the facts that the Circuit Court did not find that the libelant was an officer, seaman, passenger, or freighter, or that he had any connection with the vessel, or any business upon her or about her, except that when he went on board of her he was expecting a consignment of cotton seed by her, and went on board to ascertain whether it had arrived, and that the vessel had fully completed her voyage and was securely moored at the wharf at the time the accident occurred. It is urged that the case is one of an injury received by a person not connected with the vessel or her navigation, through the carelessness or neglect of another person, and that the fact that the person guilty of negligence was, at the time, in control of a vessel which had been previously engaged in navigating waters within the jurisdiction of the admiralty courts of the United States cannot give jurisdiction to such courts. Although a suit might have been brought in a common-law court for the cause of action sued on here, the District Court, sitting in admiralty, had jurisdiction of this suit. The vessel was water-borne in the Mississippi river at the time, laden with an undischarged cargo, having just arrived with it from a voyage. The findings sufficiently show that her cargo was to be discharged at the place where she was moored. Therefore, although the transit of the vessel·was completed, she was still a vessel occupied in the business of navigation at the time. The facts that she was securely moored to the wharf, and had communication with the shore by a gangplank, did not make her a part of the land or deprive her of the character of a water-borne vessel."

I do not understand it to be questioned that the work of the stevedore in the present case was maritime in character; certainly it cannot be successfully denied. 1 Cyc., p. 833, and note to the case of Baltimore Steam Packet Co. v. Patterson, 106 Fed. 736, 45 C. C. A. 575, 66 L. R. A. 193, and numerous cases there cited. See, also, the decisions of this court in the cases of Pacific Mail S. S. Co. v. Schmidt, 214 Fed. 513, 518, 130 C. C. A. 657; Campbell v. Hackfeld & Co., 125 Fed. 696, 62 C. C. A. 274. Indeed, the action here was brought, as has been seen, against the general agent of the owner of the ship, not against the head stevedore of whom mention is made in the opinion of the court. Nevertheless it is now held by the majority of this court that because, while so engaged in the discharge of the ship, defendant in error was·standing on the wharf, admiralty could have no jurisdiction of his alleged cause of action growing out of his injury, and that the federal court in which the action was brought rightly applied to the rights and liabilities of the respective parties, not the admiralty law, but the conflicting provisions of a state statute.

I respectfully dissent.