## No. 10,275

### Orleans

---

## TAYLOR v. SMITH AND SON, Appellants

---

(Nov. 15, 1926. Opinion and Decree.)
(Nov. 29, 1926. Rehearing Refused.)
(Jan. 4, 1927. Writs of Certiorari and Review denied by Supreme Court.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Master and Servant —Par. 154, 156; Courts—Par. 168.**

The maritime character of the contract does not of itself determine the question of jurisdiction but rather, the locality of the accident.

2. **Louisiana Digest—Master and Servant .—Par. 154, 156; Courts—Par. 168.**

Where an employee engaged in unloading a vessel is struck by a winch while on the wharf and knocked into the river and drowned; held: the injury occurred on land and the state courts had jurisdiction.

Appeal· from Civil District Court. Hon. Mark M. Boatner, Judge.

Action by Fannie Robinson, widow of George Taylor against F. Smith and Son.

There was judgment for plaintiff and defendants appealed.

Judgment affirmed.

E. V. Parham, of New Orleans, attorney for plaintiff, appellee.

John May, of New Orleans, attorney for defendants, appellants.

CLAIBORNE, J.    This is a suit under the Employers' Liability Law of this State.

Plaintiff alleged that she is the widow of George Taylor and mother of two children Essie Ruby Taylor, aged 12, and Lynn H. Taylor aged 9 years, issue of their marriage; that on March 12, 1925, the defendants were stevedores engaged in the business of loading and unloading cargoes of vessels in this city; that on said date her husband was in the employ of the defendant as a longshoreman and was assisting unloading the cargo of the ship "Texas Maru" then lying at the Stuyvesant docks; that he was earning 65 cents per hour and working ten hours per day or $6.50 per day or $39.00 per week; that on said day at about 3 o'clock p. m., the deck of the ship was much higher than the floor of the wharf, and a stage, which is a part of the stevedore's equipment, and was about 18 or 20 feet long and 5 feet wide extended beyond the wharf a distance of 4 or 5 feet, to the side of the ship; that said stage rested solely upon the wharf on a length of 14 or 15 feet; that at that hour while her deceased husband was performing the services arising out of, and incidental to, his employment in the course of defendants' business, and while he was standing upon said stage assisting in unloading the cargo of said ship, a sling loaded with five sacks of soda weighing 200 pounds each, was being lowered over the side of said ship by means of a winch upon the ship, which was operated by a longshoreman in the employ and under the control of the defendants; that the sling was swinging back and forth, and in trying to catch it and steady it in order to lower it on a waiting truck, plaintiff's husband was struck by the sling on the upper part of the body and knocked off the stage into the river where he was found dead; that at the time of her husband's death she was living with him and was dependent upon him for the support of herself and of her children; that she paid $143.10 for her husband's funeral. Plaintiff prayed for judgment for $6,000 payable $20 per week for 300 weeks with interest and for $143.10 burial expenses.

The defendants admitted that they were stevedores engaged in the business of loading and unloading cargoes of vessels; that plaintiff's husband was in their employ and earning $39 a week; that the stage rested upon the wharf and extended 4 or 5 feet beyond it and was 26 feet long and 12 feet wide; they denied all the other allegations; they denied that plaintiff's husband was struck by the loaded sling, but aver that after handing a sling to a fellow laborer on deck, he stepped back too far and "fell from the platform"; they specially aver that the accident to plaintiff's husband and his resulting death occurred in and on a navigable stream

and while he was engaged in a maritime employment and under a maritime contract; that the rights and obligations of all parties are exclusively within admiralty jurisdiction; that Act 20 of 1914 of the State cannot legally regulate the rights of parties in such cases as it would be in violation of the Constitution of the United States Article I, Section 8, 5th and 14th amendments, and of Article 3, Section 2 conferring exclusive admiralty jurisdiction upon the courts of the United States; and also in violation of the State Constitution Article I, Sections 2 and 6.

There was judgment for plaintiff as prayed for and defendants have appealed.

It is admitted on both sides that the plaintiff was engaged in a maritime contract, and that this fact is immaterial in determining the question of jurisdiction; that the jurisdiction is determined by the locality of the accident. 234 U. S. 52; 244 U. S. 206; 262 U. S. 756; 226 Fed. 581; 284 Fed. 174; 294 Fed. 549; 298 Fed. 620.

The whole controversy therefore resolves itself into the question whether the accident occurred on land or in the river.

The plaintiff contends that the accident happened on land, while the defendants' plea in their own words "is simply that the death of petitioner's husband occurred in and upon a navigable stream".

Upon that question of fact four witnesses were heard, three for the plaintiff and one for the defendants.

Plaintiff testified that she saw her husband's body at Pointe a la Hache three weeks after the accident; that there were one or two marks or bruises on one leg and on the right side of the face.

Zacharie Scott was working for the defendants; the deceased, Taylor, "went with a sling in his hand to throw it on the deck of the ship, and a load of soda came over the side of the ship and struck him and knocked him into the river"; there was space between the ship and the stage; the greater part of the stage rested upon the wharf and the balance extended beyond the wharf; he was looking right at Taylor when the sling struck him; it struck him on the head and shoulder, in the sling was a load of soda in 100 pound sacks; some of it is hard, Taylor did not come up after he fell in the river; Taylor was standing on the platform when he was struck; Taylor was standing there to catch the load; the stage belongs to the stevedores; they remain on shore; the stage was below the deck of the ship; sometimes the ship would move and the stage would touch the sides; at the time of the accident there was a young man at his side with a truck ready to load it.

Monroe Smiley was working for the defendants unloading the ship "Texas Maru"; just as Taylor went to throw the sling to the deck the load swung off and struck him; Taylor was on the stage; witness was standing 10 to 12 feet from him on the stage; the load struck him on the back and he was knocked overboard; the sling is a double rope put around ten sacks in the hold of the ship to lift them up and into the truck; then the sling is taken back and thrown back on the ship.

On behalf of defendants Elizah Albert testified that he was unloading the "Texas Maru" on the morning of the accident; he was on the ship about five feet above Taylor's head; whenever the load was pulled out of the hold his duty was to remove the hook from the sling and attach it to the second derrick so that the load

could be hoisted from the vessel down to the truck; there were three skids or stage planks; they laid flat on the wharf; two of them were about 20 feet long and one 14 feet and both of these skids extended about eight feet from the wharf; ten bags are put on the skid. He was asked:

"Q. Now tell us how this accident happened?

"A. Well, this gentleman who got drowned he came in with his sling and he came to me and handed me the sling. I was five feet overhead, and he was standing on these three skids, and he handed me the sling and stepped back like this, and one of the ring bolts was on the wharf, the bolt and ring that size, and he stepped on that ring and lost his balance and slipped down in the water.

"Q. He fell in the water between the side of the vessel and the dock?

"A. Yes, sir.

"Q. How far is the side of the vessel from the dock at the point where these skids project out over the dock?

"A. Right jam up against it. The aft end where this accident happened, was about eight feet from the vessel's side to the side of the dock, the three skids projected over the water about eight feet.

"Q. This ring that you say Taylor stumbled on was that on the skid or on the dock

"A. On the dock; the rope that they tied the ship with.

"Q. How did he step on that ring bolt if that ring bolt was eight feet from the ship?

"A. He goes on the skid and gets back like this, out of the way of the load, and when he went to step off the skid, he steps like this and he didn't get quite off, and he stepped on that cap about this far from the deck and instead of stepping down here he stepped on that ring, which was stationary of the dock and he fell in."

The plaintiff and all the witnesses are colored people.

There are several reasons why the testimony of the witnesses for the plaintiff is entitled to more weight. In the first place

their testimony that they saw the load in the sling strike Taylor is affirmative and entitled to more weight. In the second place, two witnesses testify to that fact, as against defendants' single witness, and they are not impeached.

The testimony of the witness for the defendants is confused and improbable. In describing the stage of skids he says they are 14 and 20 feet long and extend eight feet beyond the dock. Such a skid could not support the weight of ten bags and one man without tilting. He says Taylor tripped upon a ring bolt upon the dock and yet fell into the river. Since he fell into the river it is more probable that the cause of his falling arose upon the skid and not upon the dock. But this witness was in the employ of the defendants at the time of the accident, a circumstance calculated to weaken his testimony. "In suits against common carriers the testimony in their behalf of their clerks and servants must be received with great caution." State vs. Crozat, 8 La. Ann. 297; C. C. 2282 (2261).

But the trial judge saw and heard the witnesses and his conclusion cannot be reversed unless clearly erroneous. The answer itself alleges that Taylor "fell from the platform".

But the defendants argue that conceding that Taylor was knocked off of the stage or slipped from it, is immaterial; that it was not the fall from the stage that was the cause of his death but his immersion into the water which drowned him, and that this was clearly a maritime accident conferring exclusive jurisdiction upon the admiralty court.

In support of that proposition he quotes many authorities, among which is the case of City of Lincoln, 25 Fed. 835. There

the Steamship City of Lincoln was discharging booms upon, a wharf. The wharf broke down, causing the booms to be thrown into the water and lost. A libel was filed, and the same exceptions were made as have been interposed in this case. In overruling them Judge Brown said:

"The injury to the libellants' steel booms was effected wholly in the water, into which they were thrown through the breaking down of the wharf. The whole 'substance and consummation of the injury' were therefore in the water. It was the water that did the damage. That was the place of the damage, and consequently the place of the tort, for the purposes of jurisdiction. If the booms in this case had not been thrown into the water, the injury in question would not have arisen."

The distinctions made in the above case are too subtle for the judicial mind to contemplate. But even so, in that case the booms themselves had not been struck or injured prior to their immersion in the water; while in the present case, we have found that Taylor had been knocked down by bags of soda. The defendants in their very elaborate and learned brief cite other cases in line with the Lincoln case. The plaintiff in his equally exhaustive and able brief cites many decisions in opposition. to the Lincoln case. These last 259 U. S. 263; 226 Fed. 590, cases are more in accord with our views on the subject and we adopt them.

·We are of the opinion that the plaintiff is entitled to relief, and that if it was denied her in this case she would get none. The case is perhaps equally balanced in technicalities, and if we err, we prefer to do so on the side that is supported by the judgment of the trial court and possesses all the equities rather than on the one that may be technically right.