Ogden Hoffman and F. Marbury, for the United States.

Nash, Noble, Price & Greasley, for prisoners.

---

## Case No. 14,932.

### UNITED STATES v. DAVIS.

[2 Sumn. 482.] [1]

Circuit Court, D. Massachusetts.  May Term, 1837.

COURTS—CRIMINAL JURISDICTION—CRIMES ACT—HIGH SEAS—INTERNATIONAL LAW.

1. A gun was fired from an American ship, lying in the harbor of Raiatea, one of the Society

[1] [Reported by Charles Sumner, Esq.]

Isles and a foreign government. by which a person on board a schooner, belonging to the natives and lying in the same harbor. was killed. *Held,* that the act was, in contemplation of law, done on board the foreign schooner, where the shot took effect, and that jurisdiction of it belonged to the foreign government. and not to the courts of the United States under the crimes act of 1790, c. 36. § 12 [1 Story's Laws, 85; 1 Stat. 115, c. 9].

[Cited in U. S. v. New Bedford Bridge. Case No. 15,867; Palliser v. U. S., 136 U. S. 266, 10 Sup. Ct. 1036; Ball v. U. S., 140 U. S. 135, 11 Sup. Ct. 767. Distinguished in Re Dana, 68 Fed. 888.]

[Cited in Re Carr, 28 Kan. 14; Com. v. Macloon, 101 Mass. 21; Johns v. State, 19 Ind. 425; Lindsey v. State, 38 Ohio St. 512; People v. Adams. 3 Denio, 207; People v. Tyler, 7 Mich. 215; Ex parte Rogers, 10 Tex. App. 655; State v. Chapin, 17 Ark. 561; State v. Hall (N. C.) 19 S. E. 603; Thulemeyer v. State (Tex. Cr. App.) 31 S. W. 661.]

2. Quære, if the waters of the harbor of the island of Raiatea are to be deemed the high seas.

3. Semble. that, upon principles of international law, and independent of some statutable provisions or treaty stipulations, courts of justice are neither bound or authorized to remand prisoners for trial to a foreign government, whose laws they are supposed to have violated.

[Cited in Re Sheazle, Case No. 12,734; Re Metzger, Id. 9,511.]

[Cited in Re Fetter, 23 N. J. Law, 315.]

Indictment [against James Davis] for manslaughter of a person, whose name was unknown, against the act of 1790, c. 36, § 12 (1 Story's Laws, 84 [1 Stat. 115, c. 9]). There were two counts, one stating the offence to be committed on the high seas; the other containing a special statement of all the circumstances as to locality, &c. Plea, not guilty.

At the trial, it appeared in evidence from the testimony of the mate, that the defendant (Davis), was master of the ship Rose. an American whale ship. The ship sailed on the voyage in August, 1833. In the course of the voyage, the ship arrived at the island of Raiatea, one of the Society Islands. where she lay for ten or twelve days to recruit, and to cooper her oil. While lying there, a schooner came alongside, which belonged to some persons, who were residents of one of the islands, and was tied to the ship. The deceased was one of the crew of that schooner. Some difficulty having occurred with an Irishman who did not belong to the ship, but was employed on board; and the defendant (Davis) ordered him to be tied up and flogged, which was accordingly done by the mate. The deceased at that time came on board of the ship, and said to the defendant, Captain Davis, do not strike the man across the loins. The defendant told him to go out of the ship, and he immediately left the ship and went on board of the schooner. The Irishman was then put in irons. Sometime after, the boat's crew of the ship Rose came on board and refused to do duty, while the Irishman remained in irons. The defendant told them to go to

work. They still refused, and one of them (a blackman) took up a handspike. The defendant had previously sent for his gun below, and then had it in his hands; and the blackman having the handspike, said to him; "Shoot straight, if you do not shoot me I will kill you." The defendant then ordered the mate to put the blackman in irons; and while the mate was doing it, the gun, then in the captain's hands, went off; and the mate, upon looking up, saw the deceased was shot, and fall instantly dead on the deck of the schooner. How the gun went off, whether purposely or not, did not appear. The defendant then went below. The deceased had not taken any part in this affray, and was all the time on board of the schooner until he was shot. An examination was afterwards had before the American consul at the island, and the defendant was sent home for trial. From the testimony it further appeared, that the deceased was not an American but was a foreigner, and was believed to be an Englishman. From the testimony and other evidence, it farther appeared, that the island of Raiatea is surrounded or in a great part surrounded by a coral reef, which forms a fine harbor, a half mile wide from the reef to the island. At high water the coral reef is not out of water or visible; but at low vater it is, as the natives may then be seen walking on the reef. At high water, the sea of course washes entirely over the reef. There are small islets about the reef, and two places only where vessels can enter. The entrances are narrow, not above twenty rods wide. Pilots are there required at both entrances, and pilotage and port duties are paid. There is no better harbor in the South Seas; and it is not an open roadstead. The ship and schooner, at the time of the occurrence, lay within the reef about one hundred and fifty yards from the shore of the island, about two miles from one of the entrances. The place was commonly called a harbor or port.

Upon this evidence obtained from the witness for the government; Choate for the defendant, without going into any evidence on his side, cited 3 Murray, Enc. Geography, art. Raiatea, p. 159, and 2 Malte Brun, Geography, p. 294, and contended, that upon the government's own evidence, the court had no jurisdiction of the case. He said, that he was prepared to show, that no offence had been committed; but that the defendant had good reason to suppose, that his gun was not loaded, and only pointed it for intimidation; and that he had been tried before the king of the Society Islands, and had been acquitted. But, as he thought, the offence, if any, was not within the jurisdiction of the court. He cited U. S. v. McGill, 4 Dall. [4 U. S.] 426.

Mr. Mills, Dist. Atty., said he was willing to submit the case upon the evidence, to the court and jury.

Before STORY, Circuit Justice, and DAVIS, District Judge.

STORY, Circuit Justice. We are of opinion, that under the circumstances established in evidence, there is no jurisdiction in this cause. The crimes act of 1790 (chapter 36, § 12), on which this indictment is founded, gives to this court jurisdiction of the crime of manslaughter only when committed "on the high seas." We do not absolutely decide, whether the place where this offence, if any, was committed, was the high seas or not; because that might be affected by considerations of a very delicate and difficult nature, as whether it was high or low tide; for a place may at high water be the high seas, and yet at low water be strictly a part of the land, as is the case on our seashore, according to the well known doctrine in Constable's Case, 5 Coke, 106a. In the present case at high water, the tide of the ocean had full sweep over the place in question; and it may be matter of grave consideration, whether, if the whole reef was at the time covered with water, the whole, including the place where the schooner lay, ought not to be deemed the high seas. But on this we give no opinion.

What we found ourselves upon in this case, is, that the offence, if any, was committed, not on board of the American ship Rose; but on board of a foreign schooner belonging to inhabitants of the Society Islands, and of course, under the territorial government of the king of the Society Islands, with which kingdom we have trade, and friendly intercourse, and which our government may be presumed (since we have a consul there) to recognize as entitled to the rights and sovereignty of an independent nation, and of course entitled to try offences committed within its territorial jurisdiction. I say the offence was committed on board of the schooner; for although the gun was fired from the ship Rose, the shot took effect and the death happened on board of the schooner; and the act was, in contemplation of law, done where the shot took effect. So the law was settled in the case of Rex v. Coombes, 1 Leach, 388, where a person on the high seas was killed by a shot fired by a person on shore, and the offence was held to be committed on the high seas, and to be within the admiralty jurisdiction. Of offences committed on the high seas on board of foreign vessels (not being a piratical vessel,) but belonging to persons under the acknowledged government of a foreign country, this court has no jurisdiction under the act of 1790 (chapter 36, § 12). That was the doctrine of the supreme court in U. S. v. Palmer, 3 Wheat. [16 U. S.] 610, and U. S. v. Klintock, 5 Wheat. [18 U. S.] 144, and U. S. v. Holmes, Id. 412; applied, it is true, to another class of cases, but in its scope embracing the present. We lay no stress on the fact that the deceased was a foreigner. Our judgment would be the same, if he had been an Ameri-

can citizen. We decide the case wholly on the ground, that the schooner was a foreign vessel, belonging to foreigners, and at the time under the acknowledged jurisdiction of a foreign government. We think, that under such circumstances, the jurisdiction over the offence belonged to the foreign government, and not to the courts of the United States under the act of congress.

The jury immediately returned a verdict of not guilty.

NOTE. The district judge, immediately on this acquittal, suggested for consideration, whether, under such circumstances, it was not the duty of the court to remand the prisoner to the foreign government for trial. Mr. Justice Story said, that he had never known any such authority exercised by our courts, except where the case was provided for by the stipulations of some treaty. He had great doubts, whether, upon principles of international law, and independent of any statutable provisions, or treaty stipulations, any court of justice was either bound in duty, or authorized in its discretion, to send back any offender to a foreign government whose laws he was supposed to have violated. The district judge acquiesced in this view of the matter; and the prisoner was discharged.

---

UNITED STATES v. DAVIS. See Cases Nos. 3,621a and 14,820.