### LINDSTROM v. INTERNATIONAL NAV. CO.

(Circuit Court, E. D. New York. July 17, 1902.)

1. SHIPPING—INJURY CAUSING DEATH ON HIGH SEAS—JURISDICTION.
    A steamship company operating an American vessel registered in the port of New York is liable to the administrator of a passenger whom it negligently permits to be washed overboard and drowned in the high seas, under Code Civ. Proc. N. Y. § 1902, conferring on a personal representative the right to sue for the death of his decedent where it was caused by a default for which the latter might have recovered if only injured thereby; since the tortious act was committed on board the vessel, and hence within the territory of the state of New York, though the injury was consummated by the death of the decedent in the high seas.

2. DEATH BY NEGLIGENCE—DAMAGES.
    A verdict of $5,000 awarded to a father, 52 years old, and in poor health, for the negligent killing of his daughter, a domestic servant, 23 years old, who habitually remitted to him about $3 a month, is grossly excessive, $1,500 being ample.

Franklin Pierce, for plaintiff.
Robinson, Biddle & Ward, for defendant.

THOMAS, District Judge.    This action was tried before the court and a jury, and verdict for $5,000 rendered.   The defendant now moves for a new trial.   The plaintiff is the father and administrator of a young woman, who, after several years of domestic service in this country, was returning to her home in Europe, on the steamer St. Paul, for the purpose of a visit.   During the voyage the vessel shipped a large wave, which violently swept the steerage passengers backwards and forwards on the deck, and some of them in and out of the companionway leading to the cabin.   The complaint charges, and the jury found, that by the defendant's negligence the plaintiff's intestate was carried overboard, and drowned in the sea.   The St. Paul is an American vessel, registered at the port of New York, and when she was on the high seas was a part of the territory of the state of New York.   Hence all civil rights of action for matters occurring aboard of her at sea are determined by the laws of that state.   McDonald v. Mallory, 77 N. Y. 546, 33 Am. Rep. 664; The Lamington (D. C.) 87 Fed. 752, and cases there cited; St. Clair v. U. S., 154 U. S. 152, 14 Sup. Ct. 1002, 38 L. Ed. 936.   Therefore the steamship and all persons aboard her, and all duties owing by such persons one to another, are governed by the laws of New York.

The ultimate question is whether the defendant's negligent act or omission on shipboard was the proximate cause of the death, or whether such cause was the drowning in the ocean.   If the proximate cause was the negligent act, which took place on the ship, then her death is related to the act or omission in such way that the death must be deemed to have been caused within the territory of the state of New York.   The defendant's naked contention is that, whatever the carrier's negligence, and however inevitably it must result in such destruction of a passenger, yet if in fact it bring the passenger into such a status that his life is extinguished by drowning, the tortious act was committed on the ocean, and the statute of the state having dominion of the vessel is inoperative.   Hence, if the carrier leave open a port in the bulwark of a vessel under such circumstances of gross negligence that it inevitably results in a passenger walking overboard, yet there is no liability, provided death result from drowning.   Should the captain of a vessel deliberately throw a passenger into the sea, still his act, although wrongfully causing death, is not actionable, nor, it would seem, punishable, because the passenger was drowned in the high seas, over which the state has no dominion.   This rule would relieve carriers by water from civil liability for all negligence or trespass upon persons on a ship, however gross or violent the same, provided it were so contrived, or did so happen, that the offended person was finally drowned as a result of the tort.

Before proceeding, certain judicial holdings should be stated.   In The Harrisburg, 7 Sup. Ct. 140, 30 L. Ed. 358, 119 U. S. 199, it was held that, in the absence of an act of congress or a statute of a state giving a right of action therefor, a suit in admiralty could not be

maintained in the courts of the United States to recover damages for negligently causing the death of a human being on the high seas; and that the enabling statute of a state, if applicable (which is not determined), did not authorize the action to be maintained on account of the expiration of the time limited for the same. In The Alaska, 9 Sup. Ct. 461, 130 U. S. 201, 32 L. Ed. 923, it appeared that on account of the collision between the British steamship Alaska and the pilotboat Columbia on the high seas, all members of the crew of the pilotboat were drowned, and it was held that there could be no recovery in admiralty against the steamship on account of the death of such persons. In the opinion it is said:

"It is admitted by the counsel for the libelants that the statute of New York (Code Civ. Proc. § 1902) on the subject of actions for death by negligence does not apply to the present case, because the deaths did not occur within the state of New York, or in waters subject to its jurisdiction."

In that case a foreign vessel collided with a vessel from the port of New York, with the result of casting the members of the crew of the latter vessel into the ocean, where they drowned; and the judgment proceeds upon the ground that the admiralty had no jurisdiction independently of the statute of the state giving the cause of action, and that the statute did not cover the locus in quo of the accident,—that is, the state of New York could not make laws for the place, nor for both the parties. In Rundell v. La Compagnie Generale Transatlantique (D. C.) 94 Fed. 366, affirmed 40 C. C. A. 625, 100 Fed. 655, 49 L. R. A. 92 (followed by Judge Townsend in the matter of the petition of La Compagnie Generale Transatlantique, owner of the steamship La Bourgogne, to limit its liability), the circuit court of appeals for the Seventh circuit determined that there could be no recovery for loss of life, where a passenger on the Bourgogne was killed by being drowned, as the result of a collision occurring wholly through the fault of the carrying vessel, which was flying the French flag, and was subject to a French law, which authorized an action for death by wrongful act upon a French ship. The court placed its decision upon two grounds:

"The first is that it does not appear from the libel that the death of the deceased occurred upon the steamship La Bourgogne, the averments being merely that he lost his life by drowning, as a result of a collision, and consequent sinking of the vessel; second, that in cases arising in tort upon the high seas the United States district court, sitting in admiralty, cannot enforce the local law of France, even if in terms it applied to the case, which does not appear, but that such cases must be adjudged and governed by the general maritime and admiralty law as understood and administered by the United States courts."

It is considered that the decisions in The Alaska and similar cases do not touch the action at bar, and that pursuant to usual and easily stated legal principles the defendant is clearly liable.

The New York statute (Code Civ. Proc. § 1902) provides that:

"The executor or administrator of a decedent, who has left him or her surviving a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent, by reason thereof, if death had not ensued."

This statute means that if A., by act or omission, be guilty of a breach of duty owing to B., whereby B. is injured and killed, B.'s representative, in behalf of husband, wife, or next of kin, pecuniarily damaged by such death, may maintain an action therefor, provided B., had he not been killed, but injured, could have maintained an action for such injury. The intention of the law in New York is that the injured person shall recover for his injuries if he live, and, if he die, his representative shall recover certain damages. Littlewood v. Mayor, 89 N. Y. 24, 42 Am. Rep. 271. Two vital provisions of the statute must be observed: (1) Wrongful act or omission must cause the death; (2) the representative may recover for such death when the injured man could have recovered for the injury, had he lived. Hence the questions are: (1) Did defendant's wrongful act proximately produce the decedent's death? (2) Could she have recovered for any injuries received by her, if living?

Had Ahlin, decedent, lived, she could have recovered for the injuries resulting from the defendant's negligence, whether received on shipboard or in the ocean. The wrongful act or omission took effect on shipboard,—that is, territory of New York,—and the case falls within the rule that "liability must be determined by the law of the place where the alleged tortious act was committed or suffered." The Lamington (D. C.) 87 Fed. 753. The crucial test is, where was the tortious act committed, not where were the damages consummated. See this subject generally discussed in The Strabo (D. C.) 90 Fed. 113. There is no intention to state that a tortious act without injury gives a cause of action; but a tortious act, taking effect and producing injury, creates the cause of action, although the final injury be completed elsewhere. Thus, if A., in charge of ship, strike B, so that he fall overboard and receive injury from the ocean, the tortious act takes effect and does injury on the ship, and brings B. into a condition where he receives further injury. The blow on the ship is the proximate cause, and B. would recover for the damages received on the ship, plus the damages received in the water. The ship, and not the ocean, is the locus in quo where the wrong was committed. There is no law of torts extending to the sea that would authorize recovery; nor, if there were, would it be invoked, for the court looks to the law governing the location of the proximate cause, to wit, the ship. If A. negligently injure B., and the latter wander helplessly, and suffer from exposure, A.'s negligent act is the proximate cause of both the immediate and secondary injury; and it would not matter in what jurisdiction the secondary injury was experienced, nor what the laws of that jurisdiction were. Thus B., injured and disabled in New York, and wandering helplessly to, and encountering to his injury a storm in, New Jersey, would relate his later injury to the tortious act in New York. He would not declare upon a cause of action arising in New Jersey, and the court in New York would regard only the laws of its own state. The representative of the injured person, if the latter die, having an unsatisfied cause of action, may sue. Had Ahlin lived, she could have sued, and recovered for her injury on shipboard and in the water, and she would declare upon a negligent act or omission done or suffered within the state of New York. Hence, if the statute be

valid, her representative may sue for her death proximately caused on shipboard and completed in the sea. Either the statute is meaningless, and the law that she may sue if she live, and her representative if she die, has no efficiency, or the representative may maintain the action, for the very reason that she had a good cause of action founded on the same offense. In either case the negligent act or omission on the ship is the proximate cause. Is the statute valid? Why not? This was a domestic ship of the state of New York, and just as much a part of the territory of New York as if the locus in quo were a strip of land within it. The state may command that a person committing a tort on its soil shall be liable civilly or criminally therefor; it may enact that, if the injured person die unrecompensed, his representative may have the recompense in whole or in part. So the state may enact that he who injures another on one of its domestic vessels shall pay therefor, and, if such injury result in death, and be unsatisfied, the tort feasor shall make satisfaction to his representative. In precise and plainest words the state has so enacted, and the law covers vessels registered in its ports; and for this it had abundant authority, because it was legislating for the government of its own internal affairs. The general statute applies as directly to domestic vessels, although unnamed, as it would to a nonenumerated school district within the borders of the state.

But it is urged that this holding contravenes the decision of The Alaska, and kindred cases. There is no analogy whatever. When the state in special or general terms legislates concerning a ship, and what exists or happens on board of her, it has to do with its own domain and subjects, and nothing else. When it gives a cause of action for damages resulting from negligent acts or omissions, in the first instance, to the offended person, or, if he die from the offense, to his representative, it legislates for the government of those who are standing on the soil of New York, and doing or omitting acts as inhabitants of the state. The state exercises no dominion over the sea, nor over those disconnected with its political rule. It defines the supreme law, subject to federal jurisdiction, for an integral part of its territory and the inhabitants thereof. In The Alaska, the facts were that an English ship, herself independent of all but English authority, and sailing on the high seas, a place uncontrollable by the state of New York, ran into the Columbia, a vessel from New York, and drowned the latter's crew. The English ship, herself beyond the sway of the state of New York, navigated by those who owed no allegiance nor duty to such state, was sailing upon a sea, itself without the supremacy of that state, and did a wrongful act, not on the American ship, hence not upon or within the territory or jurisdiction of New York, but on the ocean, common ground for all nations, but under the municipal sovereignty of none. The state of New York may prescribe how its own ships shall be conducted, the penalties for misconduct thereon; but it may not define how other vessels shall bear themselves with reference to its own ships when on the high seas, nor create causes of action for injuries or deaths produced by such foreign ships. In one case the statute of the state has no extraterritorial effect, in the other it has no

effect, as the offender is foreign to its power, and commits his wrong at a place over which the state has no jurisdiction.

The propositions which lead to the conclusion that the action may be maintained are as follows:

(1) The St. Paul was an American vessel, and she and all aboard of her were subject to the municipal law of the state of New York, and hence to the statute creating a cause of action for damages for death by wrongful act or omission.

(2) When a wrongful act or omission, committed or suffered on the soil of the state of New York, or within the limits of its jurisdiction, causes a person's death, his representative may recover certain compensation therefor, if he. (the injured one) might have maintained an action for personal injury, arising from the same act or omission, had not death ensued.

(3) Had Ahlin survived, she could have maintained an action for the injury done her by the defendant's wrongful act or omission, whether the entire physical injury was received on shipboard or in the sea.

(4) Hence the present plaintiff may maintain an action for the consequences of the same wrong.

(5) A vital element is that the wrongful act or omission shall be on the soil of New York, and committed or suffered by persons at the time subject to the jurisdiction of the state of New York. It is immaterial that a portion of the damage flowing from the wrong arises in a place over which the state has no jurisdiction.

(6) The state of New York has power to comprehend ships and those navigating them within this statute, because the wrongful act is committed and takes effect upon the ship,—that is, within the territory of the state,—the ship and all thereon being subject to the municipal law of the state.

(7) The decisions of which The Alaska is a type involve torts committed or suffered by ships of foreign nationalities on the high seas, or torts committed by a foreign ship on a domestic vessel of a state, both at the time on the high seas; and the state has dominion over neither the offending ship, the place where the tort was committed, nor the persons committing it; hence may not create a cause of action against the offending vessel, her navigators or owners.

, These principles are obvious, and require no citation of authority to sustain them. The defendant owed plaintiff's intestate a duty. The jury has found that there was a breach of it. That breach was on the ship. The act or omission constituting the breach was the proximate cause of the injury, whether on the ship or in the sea. The decedent, had she survived, could have sued for her damages for the breach. The statute confers an equal right upon her representative. To sustain his action he refers only to a wrongful act or omission done or suffered on the territory of the state of New York by persons amenable to its municipal law, and at the time actually on its territory and within its jurisdiction.

The verdict of $5,000 was grossly excessive. The decedent was. a chambermaid domesticated in this country, about 23 years of age, who, upon the highest estimate, had been sending her father about

$3 a month. The father was 52 years of age, and in ill health. His expectation of life was about 10 years. The jury, by its verdict, has appropriated the earnings of the decedent to the father for the period of some 25 years. Where the pecuniary loss is incapable of definite determination, much latitude must be permitted the jury in finding it; and, indeed, it often happens that the verdict has no definite basis. But here the data is sufficiently sure: A young woman, of a given age, of a known earning power, contributing through a series of years to a father of known age and health. The decedent in 10 years would have contributed, upon the basis of her past remittances to her father, the sum of $360. It was within her power to enlarge that sum. Had she enlarged it to $80 a year, and had the jury been justified in inferring that the probable duration of the father's life would have been in fact doubled, even then the verdict should not have exceeded the sum of $1,500, and to that sum it should be reduced. The interest on $1,500 is more than twice as much as the decedent annually sent her father, so that it would furnish him double the return made by his daughter, and he would have the principal in addition.

In case the plaintiff should not consent thereto, a new trial will be granted upon the ground that the verdict is excessive.