[No. 17564. Department Two. December 20, 1922.]

THE STATE OF WASHINGTON, *Appellant,* v. W. C. DAWSON & COMPANY, *Respondent.*[1]

ADMIRALTY (1) — MASTER AND SERVANT (20-1) — JURISDICTION — WORKMEN'S COMPENSATION ACT—SCOPE—FEDERAL ACT—BUSINESS OF STEVEDORES. The act of Congress of June 10, 1922, providing that the jurisdiction of district courts shall not extend to causes arising from injuries to, or death of, persons for which compensation is provided by state workmen's compensation acts, cannot apply to injuries received in the stevedoring business, which is maritime in its nature, in view of the U. S. Const., Art. 3, § 2, declaring that the Federal judicial power shall extend to all cases of admiralty and maritime jurisdiction; since it is an attempt to take from the district courts and bring within state laws jurisdiction over maritime torts, and would work a material prejudice to the characteristic features of the general maritime law and interfere with the proper harmony and uniformity thereof.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered September 13, 1922, upon sustaining a demurrer to the complaint, dismiss-

[1]Reported in 211 Pac. 724; 212 Pac. 1059.

ing an action to collect a premium under the workmen's compensation act. Affirmed.

*The Attorney General* and *John H. Dunbar, Assistant,* for appellant.

*Cosgrove & Terhune,* for respondent.

*Guie & Halverstadt, amici curiae.*

MAIN, J.—This action was brought for the purpose of collecting premiums upon the pay roll of the defendant corporation, which was engaged in the business of stevedoring. A demurrer was interposed to the complaint, which was sustained by the trial court. The plaintiff refused to plead further and elected to stand upon its complaint, and a judgment was entered dismissing the action, from which the plaintiff appeals.

The question to be determined is whether the industrial insurance department of the state government has the right to collect from an employer engaged in the business of stevedoring a percentage of his pay roll. In other words, is the stevedoring business within the jurisdiction of the industrial insurance department, as are other extra-hazardous industries in the state? Laws of 1919, p. 134, ch. 67, § 2, provides that:

"The provisions of this act [the Workmen's Compensation Act] shall apply to employers and workmen engaged in maritime works or occupations only in cases where and to the extent that the payroll of such workmen may and shall be clearly separable and distinguishable from the payroll of workmen employed under circumstances in which a liability now exists or may hereafter exist in the courts of admiralty of the United States; . . . "

On the 7th day of November, 1921, the industrial insurance department passed a resolution determining and establishing the percentage of the pay roll which should be exacted from those engaged in the steve-

doring business. It was to collect this premium that the present action was brought. The work of a stevedore is maritime in its nature and the rights and liabilities of the parties connected therewith are matters which are within the admiralty jurisdiction of the United States. This is settled by the holdings of the United States supreme court, which were followed by this court in *State ex rel. Jarvis v. Daggett,* 87 Wash. 253, 151 Pac. 648, L. R. A. 1916A 446, 10 N. C. C. A. 688. It is said, however, that the Congress of the United States has taken from the Federal district courts jurisdiction over admiralty matters where, under the workmen's compensation law of any state, district or territory, there is a complete remedy. The question to be determined is one under the constitution of the United States, the acts of Congress and the holdings of the Federal supreme court. Reference will first be made to the acts of Congress.

Prior to 1917, clause 3, of §§ 24 and 256, of the judicial code provided that the district courts should have jurisdiction of all civil causes of admiralty and maritime jurisdiction; "saving to suitors, in all cases, the right of a common-law remedy where the common law is competent to give it." On October 6, 1917 (40 Stat. at L. 395), §§ 24 and 256 of the judicial code were amended by adding a clause saving to claimants "the rights and remedies under the workmen's compensation law of any state.' This act will be referred to as the 1917 amendment. In *Knickerbocker Ice Co. v. Stewart,* 253 U. S. 149, that amendment was held to be unconstitutional. On June 10, 1922, Congress passed another amendatory act which declared, among other things, that the rights and remedies conferred under the workmen's compensation law of any state,

district, territory or possession of the United States should be exclusive, and provided:

"That the jurisdiction of the district courts shall not extend to causes arising out of injuries to or death of persons other than the master or members of the crew, for which compensation is provided by the workmen's compensation law of any state, district, territory or possession of the United States."

By this amendment Congress attempted to take from the district courts jurisdiction where the workmen's compensation law of any state, district or territory had given a remedy. It was an attempt, in effect, to bring within the workmen's compensation law of any state or territory a branch or a part of the admiralty jurisdiction of the United States. If Congress can do this, the industrial insurance department of the state had a right to collect from the respondent premiums upon its pay roll, but Congress has not the exclusive right in determining where matters which are within the admiralty jurisdiction of the United States shall be adjudicated. Article 3, § 2, of the Federal constitution provides in part as follows:

"The judicial power shall extend to . . . all cases of admiralty and maritime jurisdiction . . . ."

In *The Lottawanna,* 88 U. S. 558, the extent of the maritime law operative throughout the United States was discussed and it was there said that the constitution, in the provision above quoted, must have referred to a system of law coextensive with, and operating uniformly in, the whole country. The language of the court was as follows:

"That we have a maritime law of our own, operative throughout the United States, cannot be doubted. The general system of maritime law which was familiar to the lawyers and statesmen of the country when the constitution was adopted, was most certainly intended

and referred to when it was declared in that instrument that the judicial power of the United States shall extend 'to all cases of admiralty and maritime jurisdiction.' But by what criterion are we to ascertain the precise limits of the law thus adopted? The constitution does not define it. It does not declare whether it was intended to embrace the entire maritime law as expounded in the treatises, or only the limited and restricted system which was received in England, or lastly, such modification of both of these as was accepted and recognized as law in this country. Nor does the constitution attempt to draw the boundary line between maritime law and local law; nor does it lay down any criterion for ascertaining that boundary. It assumes that the meaning of the phrase 'admiralty and maritime jurisdiction' is well understood. It treats this matter as it does the cognate ones of common law and equity, when it speaks of 'cases in law and equity,' or of 'suits at common law,' without defining those terms, assuming them to be known and understood.

"One thing, however, is unquestionable; the Constitution must have referred to a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states."

In *Atlantic Transport Co. of W. Virginia v. Imbrovek*, 234 U. S. 52, it was held that a maritime tort was embraced within the constitutional grant. It was there said:

"The Constitution provides that the judicial power shall extend 'to all cases of admiralty and maritime jurisdiction,' and the act of Congress defines the jurisdiction of the District Court, with respect to civil causes, in terms of like scope. To hold that a case of

a tort committed on board a ship in navigable waters, by one who has undertaken a maritime service, against one engaged in the performance of that service, is not embraced within the constitutional grant and the juris-dictional act, would be to establish a limitation wholly without warrant.''

In *Southern Pacific Co. v. Jensen,* 244 U. S. 205, it was pointed out that it was difficult, if not impossible, to define with exactness just how far the general mari-time law may be changed, modified or affected by state legislation. It was recognized that, to some extent, this could be done. That case involved the question as to whether the work of a stevedore was such that it could be brought within the workmen's compensation act of the state of New York. It was held that this could not be done because it would work material prejudice to the characteristic features of the general maritime law and interfere with the proper harmony and uniformity of that law in its international and interstate relations. It was there said:

''And plainly, we think, no such legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations. This limitation, at the least, is essential to the effective operation of the fundamental purposes for which such law was incorporated into our national laws by the Constitution itself. These purposes are forcefully indicated in the foregoing quotations from The Lotta-wanna.''

In the same opinion it was further stated:

''The work of a stevedore in which the deceased was engaging is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities

19—122 WASH.

of the parties in connection therewith were matters clearly within the admiralty jurisdiction.''

In *Chelantis v. Luckenbach S. S. Co.*, 247 U. S. 372, referring to *Southern Pacific Co. v. Jensen*, it was said:

''Under the doctrine approved in *Southern Pacific Co. v. Jensen*, no State has power to abolish the well recognized maritime rule concerning measure of recovery and substitute therefor the full indemnity rule of the common law. Such a substitution would distinctly and definitely change or add to the settled maritime law; and it would be destructive of the 'uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states'.''

In *Knickerbocker Ice Co. v. Stewart*, 253 U. S. 149, the 1917 amendment, as above stated, was held to be unconstitutional. The same reasons which defeated the constitutionality of that act would apply here, to the effect that the state law cannot encroach upon admiralty matters where to do so would work material prejudice to the characteristic features of the general maritime law or interfere with the proper harmony and uniformity of that law in its international and interstate relations. This court is not holding the 1922 amendment, wherein it attempts to divest the district court of jurisdiction, of no effect. The more precise question is whether the state has a right to encroach upon the general maritime law in a way that would affect its harmony and uniformity in its interstate relations. In the *Knickerbocker* case, after reviewing the more recent opinions as well as the earlier cases, the court stated that it accepted the following doctrine:

''The Constitution itself adopted and established as part of the laws of the United States, approved rules of the general maritime law and empowered Congress to legislate in respect of them and other matters

within the admiralty and maritime jurisdiction. More-
over, it took from the States all power, by legislation
or judicial decision, to contravene the essential pur-
poses of, or to work material injury to, characteristic
features of such law or to interfere with its proper
harmony and uniformity in its international and inter-
state relations. To preserve adequate harmony and
apropriate uniform rules relating to maritime matters
and bring them within control of the Federal Govern-
ment was the fundamental purpose; and to such definite
end Congress was empowered to legislate within that
sphere."

Further, it was said:

"Having regard to all these things, we conclude
that Congress undertook to permit application of
Workmen's Compensation Laws of the several States
to injuries within the admiralty and maritime jurisdic-
tion; and to save such statutes from the objections
pointed out by *Southern Pacific Co. v. Jensen.* It
sought to authorize and sanction action by the States
in prescribing and enforcing, as to all parties con-
cerned, rights, obligations, liabilities and remedies
designed to provide compensation for injuries suffered
by employees engaged in maritime work.

"And so construed, we think the enactment is beyond
the power of Congress. Its power to legislate concern-
ing rights and liabilities within the maritime jurisdic-
tion and remedies for their enforcement, arises from
the Constitution, as above indicated. The definite
object of the grant was to commit direct control to the
Federal Government; to relieve maritime commerce
from unnecessary burdens and disadvantages incident
to discordant legislation; and to establish, so far as
practicable, harmonious and uniform rules applicable
throughout every part of the Union.

"Considering the fundamental purposes in view and
the definite end for which such rules were accepted, we
must conclude that in their characteristic features and
essential international and interstate relations, the
latter may not be repealed, amended or changed except
by legislation which embodies both the will and deliber-

ate judgment of Congress. The subject was intrusted to it to be dealt with according to its discretion—not for delegation to others. To say that because Congress could have enacted a compensation act applicable to maritime injuries, it could authorize the States to do so as they might desire, is false reasoning. Moreover, such an authorization would inevitably destroy the harmony and uniformity which the Constitution not only contemplated but actually established—it would defeat the very purpose of the grant.''

The cases of *Grant Smith-Porter Ship Co. v. Rohde,* 257 U. S. 469, and *Western Fuel Co. v. Garcia,* 257 U. S. 233, are not out of harmony with the previous holdings of that court. In the *Grant Smith* case, the workmen's compensation law of the state of Oregon was under consideration. By that law an option is given both to the employers and the workmen to accept the compensation law or to reject it. It was there said that, since both parties had accepted and proceeded under the statutes by making payments to the industrial accident fund, it could not properly be held that they contracted with each other in contemplation of the general system of maritime law. Since they did not contract with each other in contemplation of the general system of maritime law, the regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations. The law of this state differs from that of Oregon because here, as pointed out in *Shaughnessy v. Northland Steamship Co.,* 94 Wash. 325, 162 Pac. 546, Ann. Cas. 1918B 665, neither the employer nor the employee has any right of election as to whether he

will come under and be governed by the provisions of the act.

In *Western Fuel Co. v. Garcia, supra,* a citizen, a resident of California was instantly killed while employed as a stevedore in the hold of a vessel then anchored in San Francisco bay and discharging her cargo. Recovery was sought in admiralty, and it was there held that a state statute giving a right of action in such cases would be sustained because it did not work material prejudice to the characteristic features of the general maritime law nor interfere with the proper harmony and uniformity of that law in its international and interstate relations. After reviewing prior decisions, it was said:

"As the logical result of prior decisions we think it follows that where death upon such waters follows from a maritime tort committed on navigable waters within a state whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel in personam for the damages sustained by those to whom such right is given. The subject is maritime and local in character, and the specified modification of or supplement to the rule applied in admiralty courts when following the common law will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations. *Southern Pac. Co. v. Jensen, supra.*"

The question there was whether the state law could supplement the general admiralty law which was to be administered in the Federal courts, and not whether the state could take jurisdiction over a maritime tort. The bringing of an employer engaged in the stevedore business within the provisions of the industrial insurance act would take from the admiralty jurisdiction conferred by the Federal constitution upon the United

States and vest it in the state. As we read the decisions of the Federal supreme court, this may not be done, because to do so, as pointed out in *Southern Pacific Co. v. Jensen*, and *Knickerbocker Ice Co. v. Stewart, supra*, would work material prejudice to the characteristic features of the general maritime law and interfere with the proper harmony and uniformity of that law in its international and interstate relations.

The judgment will be affirmed.

PARKER, C. J., FULLERTON, and TOLMAN, JJ., concur.

## ON REHEARING.

### [*En Banc.* February 16, 1923.]

PER CURIAM.—After the opinion of Department Two was filed in this case, a petition for rehearing was presented, in which our attention was called for the first time to the case of the *State Industrial Commission of New York v. Nordenholt Corporation*, U. S. Supreme Court Adv. Op's No. 16, July 1, 1922, page 567. Upon the argument, when the case was heard *En Banc*, it was suggested that the statement in the opinion, to the effect that the work of a stevedore is maritime in its nature and a matter within the admiralty jurisdiction of the United States, was too broad because it did not seem to recognize the two classes of stevedores. It appears that there are stevedores whose work is upon the dock or wharf, and also those whose work is upon the boat. The latter are sometimes called "water stevedores." The question whether the stevedores who work upon the dock may be brought within the workmen's compensation act of this state is not involved in this case. The question here has to do solely with those who work upon the water, and which work is maritime in its nature; and the rights and liabilities connected therewith are mat-

ters which are within the admiralty jurisdiction of
the United States. The Department opinion must be
understood as referring only to those stevedores who
work upon the boat.

The case of *State Industrial Commission of New
York v. Nordenholt Corporation, supra,* is not out of
harmony with the views expressed in the Department
opinion. In that case the question was whether a long-
shoreman working upon a dock was within the work-
men's compensation act of the state of New York, and
it was there held that he was under such act. That
case is distinguishable from the one now before us
because there the stevedore was working upon the
dock, while here the attempt is to bring within the
workmen's compensation act of this state those who
are working upon the water and whose work is there-
fore maritime in its nature. The stevedore who works
upon the dock has a common law right of action which
may be withdrawn and he required to take under the
workmen's compensation act. The stevedore who
works upon the boat or upon the water does not have
a common law right of action which may be withdrawn
and he be required to take under a compensation act.
In the case above cited it is said:

"When an employee working on board a vessel in
navigable waters sustains personal injuries there, and
seeks damages from the employer, the applicable legal
principles are very different from those which would
control if he had been injured on land while unloading
the vessel. In the former situation the liability of
employer must be determined under the maritime
law; in the latter, no general maritime rule prescribes
the liability, and the local law has always been applied.
The liability of the employer for damages on account
of injuries received on shipboard by an employee un-
der a maritime contract is matter within the admir-

alty jurisdiction; but not so when the accident occurs on land."

The holding in the Department opinion is adhered to and the judgment is affirmed.