[No. 18644.  Department One.  September 20, 1924.]

JAMES SCOTT, *Respondent*, v. DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION ACT—SCOPE—MARITIME SERVICE—JURISDICTION. A stevedore, employed exclusively on shore to help unload a vessel, is not engaged in maritime service, and his injuries come within the workmen's compensation act, where he was injured when a hopper and platform, which was a part of the equipment of the dock, tipped over and precipitated him to the deck of the vessel below.

SAME (20-1)—WORKMEN'S COMPENSATION ACT—SCOPE—COLLECTION OF PREMIUMS—PAY ROLL IN MARITIME SERVICE—STATUTES. Under Rem. Comp. Stat., § 2694, providing that the compensation act shall apply to employers in maritime works only to the extent that their pay rolls are separable from those falling under admiralty jurisdiction, the burden to show that it was not separable is upon the state, where it was actually separated and the state had accepted and retained premiums paid therefor.

Appeal from a judgment of the superior court for Pierce county, Askren, J., entered January 21, 1924, upon findings in favor of the plaintiff, in an action to compel the department of labor and industries to classify an injury under the workmen's compensation act and make an award therefor. Affirmed.

*The Attorney General* and *M. H. Wight, Assistant* (*Donald R. Fraser,* of counsel), for appellant.

*Burkey, O'Brien & Burkey,* for respondent.

[1]Reported in 228 Pac. 1013.

HOLCOMB, J.—This action was brought by respondent to compel the department of labor and industries to classify an injury to respondent under the workman's compensation act of this state, and to make an award therefor.

The Dupont De Nemours Company is a foreign corporation doing business in this state and operating a plant at Dupont; and the "S. S. Carolyn" was chartered by this company and used to bring a cargo of sulphur from a point outside the state to Dupont. J. T. Steeb & Company, as agent of the Dupont Company, hired stevedores to unload the boat. Scott was one of the stevedores so employed. His duties were to unhook the sling which carried the sulphur from the boat to a hopper on the dock. The tide was at ebb, and the ship heavily laden, so that the boom which carried the sling did not clear the hopper sufficiently to make its operation entirely accurate. The empty sling caught on the hopper and tipped it over, precipitating Scott to the deck of the boat, from which he sustained the injury for which he seeks compensation.

The trial court, among other things, found that respondent was injured on April 15, 1923, while in the employ of the E. I. Dupont De Nemours Company, at Dupont, Washington, in assisting in unloading sulphur from the steamer "Carolyn," his work at that time being entirely upon land, and no part thereof on the steamer, which steamer was at that time lying in the navigable waters of Puget Sound, unloading its cargo at the dock at Dupont; that the injuries received by respondent were caused by the negligence of the employees of the Dupont Company, whose work was entirely upon land, and the accident and cause of the injuries to respondent did not constitute any tort coming within the admiralty jurisdiction of the United

States courts; that the pay roll of respondent while engaged in that work was entirely separable from the pay roll of other employees of the Dupont Company who at that time were engaged in work on the steamer, and that respondent's work was wholly upon land; that respondent received injuries entitling him to compensation under the workman's compensation act of the state of Washington, and that the injuries received by respondent come within the jurisdiction of the industrial insurance division of the department of labor and industries.

From these findings the court concluded that respondent was entitled to a judgment adjudging that the injuries sustained by him in the accident come within the jurisdiction of the workman's compensation act of the state of Washington, and that he is entitled to have his injuries classified and receive compensation therefor.

To all but the first paragraph of the findings above summarized and the conclusions of law, appellant excepted, and it also proposed other findings, some of which were, and some of which were not, borne out by the record in the case.

Appellant states that: "The question to be solved is whether James Scott, who was a stevedore employed by the ship's charterer to help unload the ship and who was injured while so employed, comes under the workman's compensation act of this state. The determination of this case involves (1) the jurisdiction of the state courts in matters involving workmen engaged in maritime service, injured on a boat in navigable waters; and (2) whether or not the courts can compel the department of labor and industries to pay compensation to a workman when the department is precluded from collecting premiums from such work-

man's employer.    While the matters may thus for convenience be separately stated, the determination of the first is practically conclusive of the second.''

It is first contended by appellant that the test of admiralty jurisdiction in cases of tort is the *locus* of the injury, and not the *locus* of the cause of the injury. And that the maritime nature of the employment is the second test of admiralty jurisdiction.

A great array of cases cited by appellant defining and limiting jurisdiction in admiralty and the right of recovery to persons engaged in maritime activities have been examined.    However, the facts in this case remove it from the realm of most of the cases cited. The engagement of respondent was for services on shore.    He performed no service on board ship.    His services were not mixed, partly ashore and partly aboard ship.    His duties were to attend the sling at the end of the ship's tackle from which sulphur was dumped into a movable hopper on a track on the dock. He stood on a platform which was attached to, and made a part of, the hopper.    The hopper was a part of the permanent equipment of the dock, and was from ten to twelve feet above the deck, and about twelve feet back from the outer edge thereof.    To steady and support the hopper and platform two wooden supports or legs were hinged to the lower side of the platform at the corners.    These legs were customarily let down into the dock when cargo was being unloaded into the hopper, and were otherwise fastened up to the under side of the platform to permit the hopper to be moved.    There were also arrangements made to fasten a chain to the top opposite the water and to a point on the dock farther away.    At the time of the accident, these legs were not down, but were fastened up under the platform, and the chain was not attached

to the hopper. The placing of these supports and the chain was solely the duty of the owner of the dock, and had nothing to do with the operation of the vessel. The accident was due entirely to the fact that the supports and chain were not in place; otherwise the accident could not have happened. When the hopper was tipped over, it is true that respondent was precipitated upon the deck of the vessel below and sustained his injury by striking the deck. Upon this feature of the case appellant argues that the *locus* of the *injury* was on the deck of the ship, and hence in navigable waters, and that therefore the damage occurred on navigable waters and only admiralty would have jurisdiction of any remedy therefor. Some cases have been cited from Federal courts which sustain the view that, where the cause of the injury was on land and the consummation of it on navigable water, the jurisdiction is in admiralty.

Notwithstanding these cases, we have little doubt that no Federal court would sustain a proceeding in admiralty in this case for the damages sustained by respondent. The ship and its master were in no wise at fault. It is clear that respondent could not bring an action against the vessel, or an independent owner thereof, for his injuries under the state of facts shown here.

Under the law he is what is now known as a "land stevedore," and not a "water stevedore." *State v. Dawson & Co.*, 122 Wash. 572, 211 Pac. 724, same on rehearing, 122 Wash. 582, 212 Pac. 1059; That case and the decision of the supreme court of the United States in *State Industrial Com. of New York v. Nordenholt Corp.*, 259 U. S. 263, settle all questions involved herein. In the *Nordenholt* case, the supreme court of the United States decided that:

"When an employee working on board a vessel lying in navigable waters sustains personal injuries there and seeks damages from his employer, the liability of the employer must be determined under the maritime law. But where the injuries occur while the employee is engaged in unloading a vessel on land the local law has always been applied. A longshoreman was injured on a dock (an extension of the land) while engaged about the unloading of a vessel lying in navigable waters in New York, and died as a result of his injury. *Held*, that his contract of employment did not contemplate any dominant federal rule concerning his employer's liability in damages; and that whether awards under the state compensation act are to be regarded as made upon implied agreement of employer and employee or otherwise the act was applicable to the case, since this would not conflict with any federal statute and work material prejudice to any characteristic feature of the general maritime law."

The court of appeals of New York, deciding the same case in 232 N. Y. 507, holding that only admiralty had jurisdiction and the workman's compensation act of New York could not apply to such a case, was reversed.

In discussing the case of *State Industrial Comm.*, *supra*, the United States supreme court observed:

"The court below [the New York Court of Appeals] has made deductions from *Southern Pacific Co. v. Jensen; Clyde S. S. Co. v. Walker*, and *Knickerbocker Ice Co. v. Stewart*, which we think are unwarranted, and has proceeded upon an erroneous view of the federal law.

"When an employee, working on board a vessel in navigable waters, sustains personal injuries there, and seeks damages from the employer, the applicable legal principles are very different from those which would control if he had been injured on land while unloading the vessel. In the former situation the liability of employer must be determined under the maritime law; in the latter, no general maritime rule prescribes the

liability, and the local law has always been applied.

"The injuries out of which the *Southern Pacific Co. v. Jensen* arose occurred on navigable waters, and the consequent rights and liabilities of the parties were prescribed by the maritime law.    .    .    .

"Insana was injured upon the dock an extension of the land,    .    .    .    and certainly prior to the Workmans' Compensation Act the employer's liability for damages would have depended upon the common law and the state statutes. Consequently when the Compensation Act superseded other state laws touching the liability in question, it did not come into conflict with any superior maritime law. And this is true whether awards under the act are made as upon implied agreements or otherwise."

The above decision overruled several other cases decided by the courts of New York upon questions of a like nature. The above decision also sets at rest some questions which have been much confused by various courts of inferior Federal jurisdiction.

The second contention of appellant is that the department of labor and industries should not be compelled to pay compensation to a workman when the department is precluded from collecting premiums from such workman's employer.

The legislature of 1919 amended the workman's compensation act by adopting § 7694, Rem. Comp. Stat. [P. C. § 3486a], which provides that the compensation act shall apply to employers and workmen engaged in maritime works or occupations only in cases and to the extent that the pay roll of such workman may and shall be clearly separable and distinguishable from the pay roll of workmen employed under circumstances in which a liability now exists or may hereafter exist in the courts of admiralty of the United States, and that as to a workman whose pay roll is not so clearly separable and distinguishable the employer shall in all

cases be liable for damages and injury, etc.

In the case at bar, it is shown not only that the pay roll of respondent was separable, but that it was separated. His employer, the stevedoring company, paid a premium to the department of industrial insurance for the work that was being done by respondent and the department accepted and retained the premium. The burden is not upon respondent, as contended by appellant, to show that his employment was separated, but simply that it was separable. When it is separable under the statute, the burden is upon the department to collect the premium upon such separable pay roll.

Respondent has clearly brought himself within the provisions of the statute, and under it and the decisions above cited, the judgment is right.

Affirmed.

MAIN, C. J., TOLMAN, PARKER, and MACKINTOSH, JJ., concur.