## FIREMAN'S FUND INS. CO. v. CITY OF MONTEREY, and three other cases.

(District Court, N. D. California, S. D. June 9, 1925.)

Nos. 18569–18572.

**1. Admiralty ⬅18—Test of jurisdiction in tort is locality.**

The test of jurisdiction in admiralty in matters of tort is the locality.

**2. Admiralty ⬅22—Jurisdiction of suit for damage to property stated.**

Where the wrongful acts which cause injury to property take place on navigable water, but the injury occurs on land, a court of admiralty is without jurisdiction; and, conversely, where the acts are committed on the land, but the actual injury takes place on the water, admiralty has jurisdiction.

**3. Admiralty ⬅22—Admiralty has jurisdiction of suit for loss of goods, precipitated by collapse of a wharf into navigable water.**

Where a wharf owned and operated by respondent collapsed through its negligence, and goods of libelants, unloaded from a vessel on the wharf, fell into the navigable waters of a bay and were thereby lost or damaged, a suit for the injury is cognizable in admiralty.

In Admiralty. Suits by Fireman's Fund Insurance Company, by the Corporation of the Royal Exchange Assurance, by the Royal Insurance Company, Limited, and by the Automobile Insurance Company against the City of Monterey. On exceptions to the jurisdiction. Overruled.

Farnham P. Griffiths, Jay T. Cooper, and McCutchen, Olney, Mannon & Greene, all of San Francisco, Cal., for libelants.

Bell & Simmons, of San Francisco, Cal., and Argyll Campbell, of Monterey, Cal., for respondents.

KERRIGAN, District Judge. These are four libels, brought by certain insurance corporations against the city of Monterey, a municipal corporation. Libelants are assignees of the shippers of a large number of cases of canned sardines, which were lost or damaged when a wharf, owned and operated for commercial purposes by respondent, collapsed and precipitated said cases into the navigable waters of Monterey Bay.

The libels allege that the wharf was caused to collapse by respondent's fault and negligence: (1) In allowing the steamer San Antonio to moore alongside it; (2) in failing to breast off said steamer, which by its surging caused the accident; (3) in failing to renew the piles which supported said wharf, after many of them had become rotten and worm-eaten; (4) in storing thereon excessive quantities of heavy merchandise; and (5) in failing to have a sufficient number of fender pilings to protect against the surging of vessels while moored to the wharf.

[1] The cases are before us on exceptions to the jurisdiction of this court. Respondent alleges that the several causes of action appear from the face of the libels to have arisen on land, and hence do not lie within the maritime jurisdiction. The general rule is that "the test of jurisdiction in matters of tort is the locality." Hughes, Admiralty (2d Ed.) § 96. Here it is admitted that all the acts and omissions of respondent took place on land, since the wharf in relation to which they occurred is considered in law as land. Hughes (2d Ed.) § 198, and cases cited; The Plymouth, 70 U. S. (3 Wall.) 20, 18 L. Ed. 125. But, as no actual damage to the goods was inflicted until they were thrown or fell into the water, it is asserted that the locality of the injury is the Bay of Monterey, which admittedly is within the jurisdiction of a court of admiralty.

Respondent has cited many cases sustaining the proposition that, where a force or act, whether of omission or commission, originates on navigable waters and operates upon on an object on land, causing it to move to a place in navigable waters, to its ultimate injury, admiralty has no jurisdiction, for the reason that the wrong was committed when the force or act came in contact with or operated upon the object. Johnson v. Chicago & P. Elevator Co., 119 U. S. 388, 7 S. Ct. 254, 30 L. Ed. 447; The Haxby (D. C.) 95 F. 170; Martin v. West, 222 U. S. 191, 32

S. Ct. 42, 56 L. Ed. 159, 36 L. R. A. (N. S.) 592; Scott v. Department of Labor and Industries (The Carolyn) 130 Wash. 598, 228 P. 1013, 1015, 1925 A. M. C. 176; The Albion (D. C.) 123 F. 189; Lindstrom v. International Nav. Co. (C. C.) 117 F. 170. Conversely, cases are cited to the effect that, where a force or act originates on land and operates on an object on navigable waters, causing it to move to a place on land to its ultimate injury, admiralty has jurisdiction. The Samnanger (D. C.) 298 F. 620, 1924 A. M. C. 517; The Strabo (D. C.) 90 F. 110; affirmed, 98 F. 998, 39 C. C. A. 375.

Here the acts and omissions charged both originated on land and operated there upon the property which was damaged. Respondent therefore argues that a clear lack of jurisdiction has been made out. It is, however, noticeable that, with a single exception (The Carolyn, supra), all of these cases are in one important respect distinguishable from the case at bar; i. e., that in the latter no injury occurred until the goods reached the water, in which they finally came to rest. In Johnson v. Chicago & P. Elevator Co., supra, the Supreme Court dealt with a situation closely analogous to this. There the jibboom of a schooner, in the Chicago river, was negligently driven through the wall of a warehouse on adjacent land, whereby a large quantity of shelled corn, stored in the warehouse, ran out into the river and was lost. It was held that, "the substance and consummation of the wrong having taken place on land, and not on navigable water, and the cause of action not having been complete on such water," the remedy "belonged wholly to a court of common law." This decision, however, appears to have been largely influenced by the fact that the building also was damaged, and the loss of the corn and the injury to the building were considered as constituting one wrong.

In The Haxby (D. C.) 95 F. 170, on which strong reliance was placed, the libel alleged that a vessel "crushed into the pier with terrific force, so as to carry away a large portion of the pier, and to hurl into the water" libelant's personal property. It was held that the injury was done upon land; the court saying: "I think it must be held that the injury was done upon the pier. It was there that the wrongful violence was inflicted, and what happened afterwards, namely, the sinking of the blocks and tools, was an unavoidable consequence due to gravity, and should be considered as an inseparable incident of the blow." The case at bar would not seem to be governed by the same rule,

for here no violence was inflicted on land and no damage occurred there. The acts and omissions complained of could not have been made the subject of an action at common law for anything which occurred before the sardines in question came in contact with the water.

In Lindstrom v. International Nav. Co. (C. C.) 117 F. 170, by the defendant's negligence plaintiff's intestate was carried overboard by a wave, which violently swept the steerage passengers of a steamer backward and forward on its deck, and she was drowned in the sea. The court held that the tortious act which resulted in her death was committed on board the ship, and hence within the territory of its home state. Its reasoning was as follows: "There is no intention to state that a tortious act without injury gives a cause of action; but a tortious act, taking effect and producing injury, creates the cause of action, although the final injury be completed elsewhere. Thus, if A., in charge of a ship, strike B., so that he fall overboard and receive injury from the ocean, the tortious act takes effect and does injury on the ship, and brings B. into a condition where he receives *further* injury. The blow on the ship is the proximate cause, and B. would recover for the damages received on the ship, *plus* the damages received on the water." (Italics ours.)

In The Samnanger (D. C.) 298 F. 620, 1924 A. M. C. 517, the holding was simply that the place where a bodily injury is inflicted determines jurisdiction of the tort, and not the place where death results.

In The Strabo, supra, the exact question presented in this case was suggested, but the court declined to pass on it. There a workman on a vessel fell from a ladder, which, by reason of the master's negligence, had not been properly secured to the ship's rail. Although it was admitted that the principal injury had been suffered through impact with the dock alongside, the court said: "It may be inferred that the libelant received some personal injury before striking the dock, although, upon striking, his injury was *enhanced*." Such an inference can scarcely be made in this case; nor can the suggestion of the Circuit Court of Appeals there, that the very act of falling through the air may, through nervous shock or otherwise, cause actionable damage, have any application to cases of injury, as is the case here, to inanimate objects.

It has long been settled law that, if a person on the high seas is killed by a shot fired by a person on the shore, the offense is com-

mitted on the high seas. Rex v. Coombes, 1 Leach, 388. In United States v. Davis, Fed. Cas. No. 14932, 2 Sumn. 482, Judge Story ruled that where the killer stood on board an American ship and the person killed on board a foreign vessel, an American court was without jurisdiction. In The Epsilon, Fed. Cas. No. 4506, 6 Ben. 378, a claim for the death of a person on shore, caused by the explosion of the boiler of a steamer afloat on navigable waters, was held not to be maritime in character. In The Plymouth, 70 U. S. (3 Wall.) 20, 35, 18 L. Ed. 125, the Supreme Court held that, where a vessel lying at a wharf took fire, and the fire, spreading to certain storehouses on the wharf, consumed them, an admiralty court was without jurisdiction to award damages to the owners of the storehouses.

[2] While these latter cases may not be strictly in point, still in each of them the act or omission was complete within the jurisdiction of the court; but, since it caused no damage within that jurisdiction, the court declined to afford relief. The determining question was: Where did the actual injury, whether partial or complete, take place? Respondent's cases establish that, if *substantial* damage is suffered within the admiralty jurisdiction, the recovery for it may be enhanced by one for injuries occurring outside the jurisdiction and proximately resulting from those which accrue within it.

As stated in Ex parte Phenix Ins. Co., 118 U. S. 610, 618, 7 S. Ct. 25, 28 (30 L. Ed. 274): "The substantial cause of action, arising out of the wrong, must be complete within the locality on which the jurisdiction depended." This merely paraphrases the holding of Mr. Justice Nelson in The Plymouth, supra. Both decisions are referred to as authoritative in Johnson v. Chicago & P. Elevator Co., supra, and similar language is used there. As lately as 1915, the Circuit Court of Appeals of the Ninth Circuit, in Swayne & Hoyt, Inc., v. Barsch, 226 F. 581, 588, 141 C. C. A. 337, after collecting the cases upon the subject, quoted the holding of The Plymouth as unimpaired by subsequent decisions. The conclusion seems unescapable that, unless respondent can establish that a right of action existed for damage to these sardines, *prior* to their immersion in navigable water, the exceptions to the libels must be overruled.

In The Strabo, supra, it was conceded by the District Court that, "if the libel showed that only injury entitling to nominal damages were received, * * * this court would not entertain jurisdiction." On page 113 it says it may be admitted that until the act or omission in question "takes effect *injuriously* upon the person or property of some one, there is a mere naked breach of duty, and the case is *damnum absque injuria.*" Thus all but one of the cases cited by respondent are distinguishable on their facts, and to the extent that their principles are inconsistent with these views we are unable to follow them. There is, moreover, one well-considered authority directly in point, in which, under circumstances similar to those in the case at bar, the maritime jurisdiction was affirmed. The City of Lincoln (D. C.) 25 F. 835, 837.

There the steamship City of Lincoln was discharging booms upon a wharf. The wharf broke down, causing the booms to be thrown into the water and lost. A libel was filed, and the same exceptions were made as have been interposed in this case. In overruling them, Judge Brown said: " * * * the injury to the libelants' steel booms was effected wholly in the water, into which they were thrown through the breaking down of the wharf. The whole 'substance and consummation of the injury' were, therefore, in the water. It was the water that did the damage. That was the *place* of the damage, and consequently the place of the tort, for the purposes of jurisdiction. * * * If the booms, in this case, had not been thrown into the water, the injury in question would not have arisen."

In the first volume of his work on Admiralty (5th Ed. 199) Mr. Benedict cites this case as authority for the proposition that "the loss of cargo by the giving way of a wharf and the casting of the cargo into the water is cognizable in admiralty." This appears to us to be a proper statement of the law, and as such is applicable to the present case.

[3] Here the wrongful acts and omissions took place on land, and the property injured, at the time of their occurrence, was also on land; but unless injury was inflicted upon it there, as was held by Judge Brown no cause of action arose there. When the wharf collapsed, with the result that the goods stored on it fell into navigable waters, the injury then occurred, but only after contact with and immersion in such waters.

Jurisdiction of a court of admiralty therefore exists, and the exceptions to these libels must be overruled. It is so ordered.